DE LORENZO, Respondent, vs. SUPREME LODGE, KNIGHTS OF PYTHIAS, and another, Appellants.

*April 30—June 22, 1936.*

142

For the appellants there was a brief by *Wheeler & Witte* of Milwaukee and *Sol H. Esarey* of Indianapolis, Indiana, and oral argument by *R. S. Witte*.

For the respondent there was a brief by *McGovern, Curtis & Devos* of Milwaukee, and oral argument by *A. L. Devos* and *H. K. Curtis*.

MARTIN, J.   The defendant, Supreme Lodge, Knights of Pythias, was created by special act of congress on June 29, 1894, as a corporation entitled to use and exercise all the

powers, rights, and privileges incidental to fraternal and benevolent corporations within the District of Columbia. The act provides that: "Said corporation shall have a constitution, and shall have power to amend the same at pleasure; provided, that such constitution or amendments thereof do not conflict with the laws of the United States or of any state." The purposes of the corporation were fraternal and benevolent. By act of congress, approved April 12, 1930, the insurance department was separated from the fraternal activities of the Supreme Lodge.

By appropriate resolutions duly adopted by the Supreme Lodge, Knights of Pythias, it was provided that the insurance activities continue as a separate and distinct corporation under the name of United Mutual Life Insurance Company. It was further provided that: "Said United Mutual Life Insurance Company shall be subject to and shall assume, carry out, fulfill, and pay all liabilities, obligations, responsibilities and contracts connected with and arising from said insurance activities of said Supreme Lodge, Knights of Pythias." It was further provided that the principal office and place of business of said United Mutual Life Insurance Company was to be at Indianapolis, Indiana, and that said United Mutual Life Insurance Company "shall be conducted and operated as a mutual legal reserve life insurance company solely for the benefit of its members or policyholders and not for profit, subject to the laws of the District of Columbia governing mutual legal reserve life insurance companies and similar laws of other states or countries where it may seek license to carry on its business." It was duly licensed and authorized to transact its business in the state of Wisconsin. A further resolution provided:

"Nothing herein contained is intended nor shall be construed to change, modify, impair, alter or amend the provisions of certificates and contracts now outstanding, and such certificates and contracts shall remain in full force and

effect subject only to the right of said United Mutual Life Insurance Company and such insured members or any of them mutually to agree upon such changes in such certificates and contracts as may from time to time seem expedient to the parties."

In March, 1933, the appellant insurance company was incorporated under the laws of the state of Indiana. The act of the general assembly of the state of Indiana, approved March 11, 1933, authorizing the reincorporation of foreign insurance companies under the laws of that state, provides:

"Nothing contained herein, or authorized hereby, shall impair, or operate to impair, the obligations of any contract existing at the time of the creation of the new corporation, but such new corporation shall be subject to and shall assume, carry out, fulfill and pay all liabilities, obligations, responsibilities and contracts connected with and arising out of its business prior to such reincorporation."

The certificate of membership issued to respondent's husband provided:

"(2) The charter, all the laws, rules and regulations of the society governing the insurance department now in force and as the same may be hereafter changed, altered, added to, amended and repealed, together with the said application contained in parts 1 and 2, and any subsequently made applications that may be accepted respecting this certificate, and this certificate consisting of pages 1, 2, 3, 4, and 5, shall comprise the contract between the member and the society."

A by-law of the lodge, in force when the membership certificate was issued, provided:

"488 The laws of the order, as herein enacted, with any and all amendments thereto hereafter enacted by the Supreme Lodge, with all rules and regulations of the board of control as the same exist or may from time to time be adopted, shall be and constitute part of the contract of insurance between the members of the insurance department and such department, and shall be binding upon such members."

A further by-law, in force at the time the certificate in question was applied for and granted, governing the insurance department provided:

"514   No lapse of time nor absence or disappearance on the part of any member of the insurance department without proof of the actual death of such member while in good standing, shall entitle his beneficiary to recover the amount of his certificate, except as hereinafter provided.   The disappearance or long continued absence of any member unheard of, shall not be regarded as evidence of death nor give any right to recover on any benefit certificate issued in the insurance department until the full term of the member's expectancy, according to the American Expectancy Table of Mortality, has expired within the life of the certificate in question, and this statute shall be in full force and effect, any statute of any state or country, or rule of the common law of any state or country to the contrary.   The term 'within the life of the certificate,' as here used, is meant that the certificate has not lapsed nor forfeited, and that all payments and assessments required by the board under same have been paid."

In August, 1924, the Supreme Lodge enacted the following by-law:

(553) "(b) *Insurance, as provided for by this society, shall not cover cases of disappearance.*   Disappearance is hereby defined to be the continued, unexplained, absence of the insured within the period of seven years from date of disappearance, and the continued absence of the insured, whether explained or unexplained, for a period of seven years or more than seven years from date of disappearance. In such cases, the beneficiary shall be entitled, at his or her election, to take extended insurance, or paid-up certificate, for the amount which any reserve upon the certificate may purchase, and in case such election is not exercised within thirty days from the date of disappearance, then extended insurance will automatically be given.   In the event the certificate shall be paid up until the expiration of the insured's expectancy, the full amount of such certificate shall at once become due and payable."

It is admitted that the insured was in good standing on May 3, 1925. The furnishing of proof of death, the demand for payment, and refusal to pay are admitted. In its decision on motions after verdict the trial court said:

"The only issuable question of fact in this case was submitted to the jury [second question]. . . . This finding is adequately supported by ·the presumption of death from seven years' absence reinforced by circumstantial evidence which is uncontroverted and convincing. . . . The circumstantial showing, and the fair and reasonable inferences therefrom, were all one way and pointed convincingly to foul play and the successful and permanent disposition of the remains of the victim, a man of .very slight build readily overcome and secreted."

The first answer in the special verdict—that the insured was dead at the time of the commencement of this action—was made by the court, as a matter of law and of fact as well, under sec. 270.28, Stats. The correctness of this finding is not questioned.

It is admitted by the answer that the respondent beneficiary did not, within thirty days from the date of disappearance of the insured, elect to take extended insurance or a paid-up certificate for the amount which the reserve upon the certificate might purchase; that in the absence of such election by the beneficiary, extended insurance was automatically given; and that said extended insurance expired on February 18, 1931. The defense that proofs of death satisfactory to the board of control were not furnished within one year from the date of the death of the insured and that the action was not begun within two years after the death of the insured seem to have been abandoned. At least there is no point made on such issues in the appellants' brief. The trial court took the view that the case is one of death coupled with disappearance of the remains, and there being an absence of direct or positive evidence of death, the beneficiary was unable, without the aid of the presumption after the period of

seven years had elapsed, to comply with the provision of the policy as to furnishing proof of the fact and cause of the death. The court held that the presentation of proofs of death and the commencement of the action were timely, and that the provisions of the policy in the nature of limitations of time have no application. For cases so holding, see Annotation, 34 A. L. R. 91.

The main issue is the validity of the amendment to the defendant's by-laws made in August, 1924, section 553 (b). Under this amendment, insurance, as provided by the society, did not cover cases of disappearance as defined in the amendment. It abrogated section 514, which was a part of the by-laws when the certificate in question was issued on October 11, 1920.

Defendants contend that, under the federal charter granted to the Supreme Lodge, Knights of Pythias, and under federal authorities, the amendment of August, 1924, is valid and binding on all members to whom insurance certificates had theretofore been issued. Respondent contends that the amendment is unreasonable and invalid, and, further, that its legal effect is not to be interpreted under federal decisions but according to the law of the state of Indiana. It is further contended by the respondent that, since defendants failed to plead or prove any foreign statute, judgment, or decision which would bind the courts of Wisconsin to hold the by-law in question valid, this court must now determine the validity under its own decisions.

The defendants, in their answer, have pleaded section 553 of the by-laws, also designated supreme statutes. It provides as follows:

"Contracts of insurance made in the insurance department shall be made with reference to the laws of the state, territory or province where the head office of the said insurance department may be located at the time made, and all such contracts shall, without reference to the place of residence of the members, be deemed contracts of such state, territory or

province where said head office is located at the time made and to be controlled by the laws of same. In any suit at law or equity brought upon or involving any benefit certificate issued by the insurance department, this rule shall apply to the exclusion of any rule or law to the contrary, and the rights of the parties claiming through or by reason of said certificate; and the obligations of the insurance department shall be determined by the laws of the state, province or territory where such head office was located at the time said certificate was issued."

It is conceded that the principal office and place of business at the time the certificate in question was issued was at Indianapolis, Indiana. The defendant United Mutual Life Insurance Company is an Indiana corporation.

Sec. 327.05, Stats., provides:

"The unwritten or common law of any state or territory of the United States may be proved by parol evidence, and by the books of reports of cases adjudged in its courts."

The courts of this state will take judicial notice of the statutes of the United States, and of all the states and territories. Sec. 328.01, Stats.

In *Ellis v. Gordon,* 202 Wis. 134, 137, 231 N. W. 585, this court quoted the federal supreme court rule as follows:

" 'No court of a state is charged with knowledge of the laws of another state; but such laws are in that court matters of fact, which, like other facts, must be proved before they can be acted upon.' . . . This rule was early adopted in Wisconsin in *Rape v. Heaton,* 9 Wis. 328, 341, where it is said 'that the true rule is that . . . courts are not bound to take actual notice of the laws of other states, in the absence of all proof, but may presume them to be in accordance with their own. So that wherever any difference is relied on, it is incumbent on the party relying on it to prove such difference for the information of the court.' "

In the absence of proof of any foreign decision holding the amendment to the by-law in question valid, which would be binding upon this court, we must apply our own decisions.

That the amendment of 1924 substantially modifies the contract as contained in the membership certificate must be conceded. Relative to the change made by the amendment, the trial court said:

"It comes as close to nullifying that contract as to one class of members and their beneficiaries as the use of language will permit. The reserve power of the society to adopt amendments which automatically become part of the contract of insurance is subject to recognized limitations. It does not warrant unreasonable enactments which merely impair or undermine an existing, plain contract document."

We must hold that the instant case is ruled by the decision of this court in *Sweet v. Modern Woodmen,* 169 Wis. 462, 172 N. W. 143. There, the action was brought to recover on a benefit certificate issued by the Modern Woodmen of America to one Byron C. Sweet, November 12, 1898. A benefit certificate for $2,000, payable to his wife upon his death, was issued to him. He left home about the 1st of April, 1909. His wife heard from him until about Thanksgiving, 1909, since which time she heard nothing of or from him. In February, 1917, she commenced her action to recover the amount of the benefit certificate. The answer set up as a defense a by-law enacted by the society and in full force from and after September 1, 1908, which provided:

*"Disappearance no presumption of death.* No lapse of time or absence or disappearance on the part of any member, heretofore or hereafter admitted into the society, without proof of the actual death of such member, while in good standing in the society, shall entitle his beneficiary to recover the amount of his benefit certificate, except as hereinafter provided. The disappearance or long-continued absence of any member unheard of, shall not be regarded as evidence of death or give any right to recover on any benefit certificate heretofore or hereafter issued by the society until the full term of the member's expectancy of life, according to the National Fraternal Congress Table of Mortality, has expired within the life of the benefit certificate in question, and this

law shall be in full force and effect, any statute of any state or country or rule of common law of any state or country to the contrary notwithstanding. The term 'within the life of the benefit certificate,' as here used, means that the benefit certificate has not lapsed or been forfeited, and that all payments required by the by-laws of the society have been made."

This court said:

"It is well settled that in the administration of the internal affairs of a corporation the decisions of the tribunals of the association, within their own proper sphere, if not violative of law, may be made conclusive as to the members of the corporation. *Loeffler v. Modern Woodmen,* 100 Wis. 79, 75 N. W. 1012; *Bartlett v. L. Bartlett & Son Co.* 116 Wis. 450, 93 N. W. 473; *Callahan v. Order of Railway Conductors, ante,* p. 43, 171 N. W. 653. But a controversy as to contract rights between the association and a beneficiary under a benefit certificate cannot be considered as one of the internal affairs of the corporation. *Zaremba v. International H. Corp.* 162 Wis. 231, 155 N. W. 114. The by-law relied upon as a defense substantially modifies the contract embodied in the benefit certificate. By the terms of the certificate the defendant obligated itself to pay plaintiff $2,000 upon the death of Byron C. Sweet. His death was proved by legal evidence. The effect of the by-law was to make it impossible to recover on the certificate except by virtue of positive proof of death and in cases such as this to postpone recovery for a number of years, during which time the premium payments were required to be made in order to keep the benefit certificate alive. If the association could thus modify the contract no reason is perceived why it could not entirely nullify it. While Sweet in his application for membership agreed that 'the laws of this society now in force, or hereafter enacted, enter into and become a part of every contract of indemnity by and between the members and the society, and govern all rights thereunder,' such agreement should not be construed as giving the defendant the right, after the issuance of the certificate, to so legislate as to unreasonably affect existing rights or modify obligations already entered into. It is the general holding of courts that

by-laws enacted pursuant to such reserve power on the part of the society must be reasonable, and they will not be upheld in so far as they seek to unreasonably modify existing contracts between the society and its members."

The court approved of a directed verdict in favor of the plaintiff.

The judgment must be affirmed.

*By the Court.*—Judgment affirmed.