## The People of the State of Illinois, Defendant in Error, v. Robert Luster, Plaintiff in Error.

### Gen. No. 39,538.

Opinion filed November 8, 1937.

BENJAMIN ·C. BACHRACH, of Chicago, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, BLAIR L. VARNES, Assistant State's Attorneys, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

January 21, 1937, an information, duly verified, was filed in the municipal court of Chicago, charging that defendant, Luster, on January 17, 1937, in the city of Chicago, county of Cook and State of Illinois, "did then and there unlawfully, intentionally and maliciously operate a certain motor vehicle, to-wit: Chrysler Airflow Motor No. C–10–2945 upon the streets and public highways within the said City of Chicago, County of Cook and State of Illinois in the absence of the owner, the said J. G. Lucas, of the said motor vehicle, and without the consent of the said J. G. Lucas, in violation of section 36, chapter 95½ of the Revised Statutes of Illinois." (See Ill. Rev. Stat. 1937, ch. 95½, § 36; Jones Ill. Stats. Ann. 85.036.) It appearing to the court that defendant was present the court took jurisdiction of his person and ordered the bailiff to take defendant into custody forthwith, which was done. Defendant entered a plea of not guilty and waived trial by jury. The cause was submitted by agreement to the court for trial. Evidence was heard and the arguments of counsel. Thereupon the court found the defendant guilty as charged, and the finding was entered of record. The State's attorney then moved for final judgment on the finding, and it was adjudged by the court that defendant was guilty of the criminal offense of driving an automobile in the absence and without the consent of the owner. Defendant was then sentenced to confinement at labor in the house of correction for a space of five days from and after the delivery of his body to the superintendent of said house of correction, a motion in arrest of judgment having been overruled. A motion to vacate the sentence was entered and continued until February 6, 1937, when the same was overruled and denied.

Defendant sued out this writ of error and argues in the first place that the judgment should be reversed be-

cause the statute is so uncertain and indefinite as to make the section in question ambiguous. In support of this contention defendant cites *Vallat v. Radium Dial Co.*, 360 Ill. 407; *Parks v. Libby-Owens-Ford Glass Co.*, 360 Ill. 130, and *Boshuizen v. Thompson & Taylor Co.*, 360 Ill. 160, where in holding a section of the so-called Occupational Diseases Act invalid the Supreme Court said in substance that a law must be complete in all its terms and must be definite and certain enough to enable every person, by reading the law, to know what his rights and obligations are and how the law will operate when put into execution. The section of the motor vehicle law here in question provides: "No chauffeur or other person shall drive or operate any motor vehicle or motor bicycle upon any street, or highway in this State in the absence of the owner of such motor vehicle or motor bicycle without said owner's consent; and no chauffeur or other person having the care of a motor vehicle for the owner shall receive or take directly, or indirectly, any bonus, discount or other consideration, for the purchase of supplies or parts for such motor vehicle or for work or labor done thereon by others," etc.

The evidence taken in this case shows beyond reasonable doubt that the informant, J. G. Lucas, was the owner of the Chrysler automobile which was used by himself and his wife. Mr. Lucas rarely drove the automobile himself. Defendant Luster was employed by Mr. Lucas January 17, 1937, and acting as chauffeur brought the car from the garage and took Mrs. Lucas downtown, where she visited the offices of an optician, defendant then drove Mrs. Lucas to her home. The informant testifies he told defendant to "take the car back to the garage, Luster, and don't drive it anywhere else." Mrs. Lucas came out and gave Luster the same instruction in the presence of Mr. Lucas. The car was kept in a public garage on Pershing road, just opposite Rhodes avenue, about two blocks from 3646 South

Parkway where Mr. Lucas lived. Defendant left the residence of his employer on the night in question and after receiving these instructions, about ten minutes of eight o'clock. Later in the evening, at 9:30, at 10:30 and 11:30, Mr. Lucas called the garage and learning the automobile was not there notified the police. Officer James arrested defendant at the northeast corner of Pershing road and Rhodes avenue, at 3:30 a. m., January 18, 1937, when defendant drove up to the corner in the Chrysler automobile belonging to Mr. Lucas. The officer testified that he questioned defendant at that time, and that defendant said he had left the Lucas home about eight o'clock on the previous evening and then went with his wife to visit some relatives and then to visit a friend, and that this was the reason he was driving the automobile at that hour in the morning. The officer says he asked him whether he had permission to use the car at that time and that he said, "No," but that he used the car to take his wife to visit relatives and friends. He was put under arrest and taken to the 4th district police station; the following day, January 19, 1937, he was brought to the State's attorney's office and was interrogated there in the presence of an assistant State's attorney, Mr. Lucas and Officer James. His statement then made to the State's attorney is in evidence.

Defendant testified that on the evening in question Mr. Lucas told him to put the car away, and that he should not take any chances; that Mrs. Lucas said to him, "Don't drive the car tonight"; that Mr. Lucas said, "Do not take any chances, Luster." Defendant said that when Mr. Lucas told him not to take any chances he understood that to mean that he was to be careful how he was driving. He says he did not hear him say anything about driving straight to the garage, but Mrs. Lucas told him not to drive the car, and he understood that she had a right to give him instruc-

tions about that matter. Defendant says he did not take the automobile right to the garage but went home and picked up his wife and went over to her uncle's home and from there to 31st street, where he stayed for awhile, and from there carried a lady to her home on Wabash avenue and then returned the automobile back to the garage. He pulled into the garage at three o'clock a. m., and waited for someone to take him home. He says that he said, "Ain't nobody here?" He said, "I will go up to the restaurant at 39th and Vincennes and see Melvin in there." Melvin was not in, but a man who was mopping in that place said to defendant that he did not think Melvin was working. Defendant then took the car and turned around to go back to the garage and when he got back Officer James and a party were waiting in the car. They then took the car from him and locked him up. Defendant says he paid for his own gas that night and took good care of the automobile. He admits that he told the police that he did not have any authority to drive the automobile at that hour. Mr. Lucas testified that when the car was returned it had mud on it, showing the use that had been made of it. The two windshield wipers were gone, part of these was picked up on the seat, the cigar lighting case or ash tray was demolished and the front bumper was loose.

It is argued for defendant that the word "absence" as it appears in the statute is so indefinite as to make it impossible to ascertain the true intention of the legislature in the enactment of the statute. Defendant asks whether it means absence from the State, absence from the residence of the owner, the nonpresence of the car itself, or absence from the scene of the taking of the car. The contention is in our opinion without merit. The meaning of the word "absence" when taken in connection with the context, has a well defined meaning which is generally understood by people who speak our

language. As the Supreme Court said in *People v. Lloyd,* the legislature is not required to define the meaning of words which are in common and daily use, and in *McNaught v. Hines,* 300 Ill. 167, it was said that where the language of the statute was unambiguous, there was no room for construction, that words used must be taken in their ordinary, natural and commonly received sense. The elements which go to make up the offense created by statute are clear. In the first place as to the persons to whom it refers, it may be a chauffeur or it may be any other person. As to the thing prohibited, it is either the driving or operation of a motor vehicle or motor bicycle upon any street or highway in the State, while the owner is absent, which, of course, means absence from the place where the vehicle is being operated without the owner's consent. We think the provision of the statute is clear, simple, and easily understood.

Defendant contends in the second place that the provisions of the statute are not applicable to a private chauffeur, because his employment by the owner constitutes the grant of a continuing consent to drive the automobile upon the streets or highways of the State. It is said the termination of the day's work by such private chauffeur does not operate as a withdrawal by the owner of the right of the private chauffeur to operate or drive the motor vehicle on the streets and highways, irrespective of whether that might mean the absence of permission to use the car upon an errand connected with the chauffeur's own business or pleasure. It is urged that the contract itself is inconsistent with the two essential factors necessary to constitute violation of the law, namely, the absence of the owner and the lack of the owner's consent. It is urged that if the legislature had intended to make criminal the use of the owner's car without his consent by a person employed to drive the owner's car, the legislature would have used language similar to that used by the legisla-

ture of Tennessee in a statute of that State, which was construed in *Stovall v. New York Indemnity Co.*, 157 Tenn. 301, 8 S. W. (2d) 473. We cannot give our assent to this contention. The mere fact that a person employs a chauffeur to drive his automobile does not mean that the employer parts with the possession of his property, nor does it mean that he forfeits his right and power to control and regulate the use of his own automobile. He is, notwithstanding such contract, the absolute owner and possessor of the automobile. The possession is his and not that of his servant or chauffeur. The chauffeur, by virtue of his employment, has the custody of the automobile as distinguished from its possession, but he has the care and charge of it merely for the owner, who still has the right to control it. If the owner is present and witnesses the chauffeur driving the automobile, then, of course, the consent of the owner in the absence of objection by him would be implied. If the owner is not present the chauffeur may drive the vehicle for such time, in such manner and to such places only as he may have permission, express or implied, from the owner to drive it. Otherwise the chauffeur would have absolute and complete control of the automobile, although it was the property of another, and could use or drive it as he saw fit, irrespective of the wishes of its owner. If defendant's theory is correct, the chauffeur could drive the automobile either in the State or out of it, and irrespective of the wishes of the owner, his employer. We do not so understand the law. While for the time being the chauffeur may have the automobile in his custody and control, the property therein is with the owner, and the legal possession remains in the owner. The chauffeur using the automobile and driving it contrary to the directions of the owner may be guilty of trespass or even of conversion. This is the act which the statute declares to be a misdemeanor. In this case the evidence shows without contradiction

that the informant was the owner of the automobile, that in his absence the defendant without his consent drove the same on the streets and highways of his State. Not only was the driving done without permission of the owner but contrary to his express directions. The evidence shows that defendant was guilty of the offense as charged beyond a reasonable doubt, and the judgment of the court is affirmed.

*Affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.