· JENSEN, Respondent, vs. JENSEN and another, Appellants.

*April 13—May 17, 1938.*

78

*Vilas H. Whaley* of Racine, for the appellants.

For the respondent there was a brief by *Wilbershide, Baumblatt & Storms* of Racine, and oral argument by *L. B. Baumblatt* and *J. C. Wilbershide.*

FRITZ, J. The defendants, Jens Jensen and his automobile liability insurance carrier, appeal from a judgment against them for the recovery by the plaintiff, Viggo Jensen, of damages for personal injury sustained by him upon the overturning of Jens Jensen's automobile, as the result of the sudden deflation of a tire. The word "defendant," as used hereinafter, refers to Jens Jensen solely. The plaintiff was riding in the automobile as a guest of the defendant, who was driving the car. The accident happened in Alabama, while the parties were en route from Racine, Wisconsin, where they resided, to Texas. They had stopped in Indiana for two additional guests. On the morning of June 11, 1935, the third day of the trip, defendant learned that the right rear tire had become deflated, while the car was parked near the hotel at which the party stayed overnight in Decatur, Alabama. At defendant's request, a hotel employee called a

garage serviceman to replace the tire by using one of the two spare tires on the tire racks of the car. While that change was being made, the plaintiff and his companions had breakfast, and when they returned they saw the tire which had been put on the wheel. Then from 7 o'clock a. m. they traveled about three hundred fifty miles until the accident happened at 4 o'clock p. m., when the right rear tire blew out. The car, which defendant was driving at sixty miles per hour, swerved to the left, off the concrete roadway, and overturned in a ditch on the left side thereof. It went about one hundred fifty feet before it came to a stop. It was totally destroyed by fire. The tire which blew out was not recovered, but one of the guests saw it lying on the left side of the road, off the rim, and that there was a large hole in it. During the trip the defendant and two of his guests had done the driving in shifts of fifty miles each, but the plaintiff had done none of the driving. He never protested or complained about the speed, or the manner in which the car had been operated. It was a Packard automobile, 1930 model, purchased by the defendant in 1932 as a secondhand car, driven about eleven thousand miles. It had gone about fifty-seven thousand miles when the accident occurred. But none of the original tires were on the car at that time; and the defendant testified that the tire, which blew out, was purchased by him in 1932.

The jury found (1) that the defendant was negligent in unreasonably exposing the plaintiff to danger and injury by increasing the hazard of travel beyond that assumed by him upon entering the car (a) as to speed, but that there was no such negligence on defendant's part (b) as to the condition of the tires; (2) that such negligence (a) as to speed was a cause of the accident and plaintiff's injury, but that negligence (b) as to the condition of the tires was *not* a cause; (3) and that the defendant ought *not* to have anticipated

that injury to others might follow from negligence on his part as to either speed or "condition of tire;" and furthermore, (4) that the plaintiff assumed the risk incident to riding in the automobile. On plaintiff's motion after verdict, the court changed the verdict by substituting for the jury's answers findings by the court (1) (b) that there was likewise such negligence on the defendant's part in respect to the condition of the tires; (2) (b) that such negligence was a cause of plaintiff's injury; (3) that defendant ought to have anticipated injury to others from such negligence on his part in respect to speed, and also the condition of the tire; and (4) that the plaintiff did not assume the risk incident to riding in defendant's automobile. Then, on the verdict as changed by the court, judgment was entered for the plaintiff.

The defendants contend that the jury's answers in the special verdict are sustained by the overwhelming weight of the evidence, and that, at all events, in view of the conflicts therein and the inferences to be drawn therefrom, it was beyond the court's province to substitute its findings for some of the jury's answers. On the other hand, the plaintiff contends that undisputed evidence and reasonable inferences therefrom support only the findings which the court substituted for answers of the jury. All parties appreciate that, if the evidence is conflicting, or the inferences to be drawn therefrom are doubtful and uncertain, and there is any credible evidence which will reasonably support or admit of any inference for or against the claim or contention of any party, then the proper inference to be drawn is a question for the jury, and, when it has returned a verdict, its answers should not be changed by the court's substitution of its findings for the jury's answers; and that, on an appeal, the problem is not whether the court's findings are more warranted by the evidence than the jury's answers, but the inquiry is limited to the narrow issue of whether there is any credible evidence

which, under any reasonable view, admitted of inferences which may have been drawn therefrom by the jury in arriving at its verdict. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741. Likewise, the parties recognize that, inasmuch as the state of Alabama does not seem to have had any statute in effect at the time of the accident in relation to the duties and obligations of a host to his guest, and the latter's right to recover damages from his host under such circumstances as are involved herein, and as there was no proof as to the common law of Alabama in those respects, it must be assumed that the common law of that state is the same as that of Wisconsin. Consequently, the principles stated and applied in *O'Shea v. Lavoy,* 175 Wis. 456, 185 N. W. 525; *Klein v. Beeten,* 169 Wis. 385, 172 N. W. 736; *Ormond v. Wisconsin Power & Light Co.* 194 Wis. 305, 216 N. W. 489; *Waters v. Markham,* 204 Wis. 332, 235 N. W. 797; *Pawlowski v. Eskofski,* 209 Wis. 189, 244 N. W. 611; *Eisenhut v. Eisenhut,* 212 Wis. 467, 248 N. W. 440, 250 N. W. 441; *Campbell v. Spaeth,* 213 Wis. 162, 250 N. W. 394, are in point. Therefore, to entitle the plaintiff to recover herein he had the burden of establishing that (1) the tire was defective and his injuries were proximately caused by that defect; (2) that the defendant knew of that defect; (3) that, if he did know of the defect, he realized or should have realized that it involved an unreasonable risk to his guest, the plaintiff; (4) that the defect was so concealed or hidden as not to be reasonably obvious or patent to the plaintiff, and the defect and the risk involved were in fact unknown to him; (5) and that the defendant failed to warn the plaintiff as to the defective condition and the risk involved therein. *Waters v. Markham, supra,* p. 339. In so far as there were any issues of fact under the evidence in relation to any of those matters, the determination thereof was for the jury and not for the court. If, for instance,

there was any credible evidence that reasonably admitted of inferences and the belief by the jury, because of which the jury was not satisfied, at least to a reasonable certainty, that the defendant knew that the tire was in fact defective, and that he realized or should have realized that it involved an unreasonable risk to his guests, then it was error for the court to substitute its affirmative findings for the jury's *negative* answers to the questions in the special verdict as to (1) (b) whether the defendant was negligent in relation to the condition of the tire by unreasonably exposing the plaintiff to danger and injury by increasing the hazard beyond that assumed by the plaintiff; (2) (b) whether such negligence was a cause of the accident and plaintiff's injury; and (3) whether the defendant ought to have anticipated that injury to others might probably follow from such negligence on his part.

The plaintiff,—in contending that the evidence establishes, as a matter of law, that the defendant had knowledge of the existence of the defect, which caused the accident, and that knowing of it he ought to have realized that it involved an unreasonable risk to his guests,—relies on testimony to the following effect. James T. Simmons, an experienced automobile mechanic at Racine, who did some work on the defendant's car two months prior to the accident, testified that he then told the defendant that the two spare tires were not of any use except for the possibility of running a short distance in case of a flat tire, and not to use them under any other condition. On an adverse examination the defendant had testified that he was aware of the fact that a tire deteriorates with age and use, and that after it gets old and has been used considerably it is apt to blow out, if it is driven fast and especially on a hot day, and that even a new tire can blow; that right after the spare tire was put on at Decatur he forgot that he had that tire in use; and he testified that if he had not forgotten about it he could "say without knowing" he

"wouldn't have been driving." When he returned to the car after breakfast, he told one of his guests, in referring to the spare tire, that he hoped they would have no trouble; and he told the other guest who was driving during the afternoon not to take the corners so fast because the tires were not so good. In addition there was testimony by Simmons that when he worked on the car in April he put the two tires which he considered the worst on the spare racks; that he thought he could tell the age and condition of the tires fairly well from the outside appearance, by examining the type of tread, which the manufacturers changed a little each year, and that the cracked and checked appearance also indicated age and deterioration to him. But he also testified,—

"I didn't take them apart and examine the interior of the casings because that isn't really my job and I haven't any equipment for that. . . ."

Martin C. Wagner, who had considerable experience in servicing and repairing tires, likewise testified that exterior checking on a tire indicated "exposure to the weather for a long time," and that a tire was old.

On the other hand, Simmons admitted on cross-examination,—

"The real strength lies in the condition of the fabric in the tire. Before a tire blows out, it is necessary that there be a cracking in the fabric."

Wagner also testified,—

"Tire checks . . . are small checks showing on the outside of the rubber surface caused by the action of the sun and elements. They only affect the outside surface and do not penetrate very far. I have never known a 'check' to penetrate down to the fabric."

Likewise another tire expert testified,—

"It is possible for the casing to be cracked with surface cracks without there being any damage done the fabric inside. . . . I think the only way you can determine the

fabric break in a tire is taking it off—for fabric breaks. That is the way it is usually done in tire shops. . . . Surface checks are ordinarily not deep enough to get into the fabric. Only in case of extreme age, do the cracks get deep enough."

And, in respect to the issues as to whether the defendant in fact had knowledge that the tire was defective, and if so that he ought to have realized that the defect involved an unreasonable risk to the plaintiff, there was,—in addition to matters hereinbefore stated,—but the following testimony on his part,—

"I never monkeyed with my tires and apparently they must have been in fairly good condition else I couldn't run them but they were spares. . . . *Q*. Or did you consider it perfectly safe to drive with this spare tire? *A*. I suppose I did or I wouldn't put it on, but I knew it was a spare tire but I wouldn't have driven it if I didn't think it was safe. *Q*. Did you regard it safe enough to drive it at a good fast rate of speed on a hot day? *A*. I did it. . . . *Q*. Did you regard it dangerous at all to drive your automobile on the day in question, weather conditions being as you stated they were, at a high rate of speed considering you had that spare tire on the rear right? *A*. Well, I wouldn't have done it if I thought it was dangerous. . . . *Q*. Do you know of your own knowledge whether or not the tire had any fabric bruises or fabric cracks in it or any definite defects? *A*. I have answered that once before that I never saw my tires."

There is no evidence whatsoever in the record that there were in fact any bruises or cracks in the fabric of the tire, or that anything had ever happened thereto because of which it could be inferred that the defendant knew or ought to have known of any defect therein. Even though he ought to have known of the checks on the outer surface, it does not necessarily follow, conclusively,—in view of the experts' testimony, that such surface checks do not penetrate far or affect the fabric in which there must be a crack or bruise before a

tire blows out (in the absence of a defective tube),—that the defendant knew that the tire was defective, and that he ought to have realized that the use thereof involved an unreasonable risk to his guests.

It follows that the issues in those respects, at least, were for the jury, and that therefore the court was not warranted in substituting its affirmative findings for the jury's negative answers in relation to the questions in the verdict as to causal negligence and anticipation, etc., on the part of the defendant. Consequently, the judgment entered upon the verdict as changed by the court must be reversed.

However, in its order granting plaintiff's motion for judgment on the verdict as amended, the court expressly stated that if it had not granted the plaintiff's motion for judgment, it would have been required to grant plaintiff's alternative motions for either a new trial on the ground that the answers found by the jury are contrary to the great weight and clear preponderance of the evidence, or a new trial in the interests of justice. Inasmuch as it was within the court's province to order a new trial herein in the interests of justice, at least, and as the court definitely stated that it would have done so on plaintiff's pending alternative motions therefor, if it had not granted judgment for the plaintiff, and as the cause could be remanded under sec. 270.49, Stats., with directions to determine those alternative motions within sixty days after notice of filing the *remittitur,* it is considered proper in this case to remand the record with directions to grant a new trial, in the interests of justice, on the plaintiff's pending motion.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter an order granting a new trial as stated in the opinion.