HARPER, Appellant, v. HARTFORD ACCIDENT & INDEMNITY COMPANY, Respondent.

*October 4—October 31, 1961.*

For the appellant there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil*.

For the respondent there was a brief by *La France, Thompson, Greenquist, Evans & Dye* of Racine, and oral argument by *William E. Dye*.

HALLOWS, J.   There is no issue of fact raised by the pleadings and the affidavits. The question of law to be decided is whether or not the insurance liability policy issued by the defendant covered Norton as an additional insured at the time of the accident.

The defendant issued an automobile liability policy on the 1951 Cadillac used for business and pleasure and owned

by the Lincoln Manufacturing Company, which company was referred to as a corporation in the affidavits but as a partnership in the trial court's opinion. Lincoln Manufacturing Company was located in Chicago, Illinois. Henry A. Smith, referred to as the president of the company and as a partner of the partnership, had possession of the car and used it both for business and pleasure. He kept the car at his residence in Winthrop Harbor, Illinois. His adult daughter, Leona Grabowski, was a member of his household but did not know how to drive a car.

On September 22, 1954, Henry A. Smith left for a vacation and gave his daughter permission to use the automobile for the purpose of learning to drive. He also informed her that the Granger Motors, Inc., of Kenosha, Wisconsin, would deliver to their home a new Oldsmobile, which he had purchased, and the driver would take his old Oldsmobile back. Smith informed his daughter to inquire of the Granger employee whether he would give her driving instructions. On the 25th of September, 1954, Mr. Freeman accompanied by Norton delivered the new Oldsmobile to the Smith home and the two men transferred the license plates and personal belongings from the old car to the new car. Mrs. Grabowski inquired of Mr. Freeman about driving lessons and was informed he would be unable to accommodate her before September 28th.

After the two men left, Norton returned and offered to give Mrs. Grabowski a driving lesson. The lesson was given for about half an hour. Norton agreed to return the next day, but on the following day, Mrs. Grabowski was busy and unable to find time for a lesson. Norton told her the Cadillac needed gas and her father was entitled to a free wash and simonize job. Mrs. Grabowski consented to Norton's taking the car for that purpose and gave him $2 for gas. About eight o'clock Norton returned the car but it had not been washed or simonized and a fender had

been damaged. After some discussion, Norton stated he had no way to get back to Kenosha without the car and he would see that the car was washed, simonized, and the fender repaired. Mrs. Grabowski allowed Norton to take the car to have these things done and ordered him to return it on the following day (Monday) by 5 o'clock. Mrs. Grabowski believed Norton was an employee of the Granger Motors, Inc., and the car was to be taken to the Granger garage. However, Norton at no time ever stated to Mrs. Grabowski he was an employee of the Granger Motors, Inc., or he would take the car to Granger's. That night, sometime after midnight, Norton was involved in the accident in Racine county, Wisconsin, some 15 miles north of Kenosha, while he was driving the Cadillac with the plaintiff and several others as passengers.

The preliminary question arises whether the law of Illinois or of Wisconsin applies because the insurance policy was written in Illinois covering an owner and a car kept in Illinois but the accident happened in Wisconsin. The failure to plead and prove the common law of Illinois raises the presumption that it is the same as the law of Wisconsin. *Switzer v. Weiner* (1939), 230 Wis. 599, 284 N. W. 509; *De Lorenzo v. Supreme Lodge, Knights of Pythias* (1936), 222 Wis. 141, 268 N. W. 217; *Jensen v. Jensen* (1938), 228 Wis. 77, 279 N. W. 628. By sec. 328.01, Stats., the courts of Wisconsin are required to take judicial notice of the statutes of sister states. *Switzer v. Weiner, supra.* Like Wisconsin, Illinois has an omnibus coverage clause requirement by statute (S.H.A. Ill. ch. 95½, sec. 58k [now sec. 7–317]), which is deemed to be a part of the policy by operation of law. *Konrad v. Hartford Accident & Indemnity Co.* (1956), 11 Ill. App. (2d) 503, 137 N. E. (2d) 855. The Illinois omnibus coverage statute is substantially the same as the Wisconsin statute (sec. 204.30 (3)). This

being so, the judicial construction of the foreign statute will be presumed to be the same as Wisconsin in the absence of evidence to the contrary. *Hansen v. Hansen* (1956), 274 Wis. 262, 80 N. W. (2d) 230.

Both parties agree that the precise point for determination on this appeal has not been determined by the court of last resort in Illinois; and the cases from the intermediate appellate courts of Illinois do not seem inconsistent with the law of this state. See *Cocos v. American Automobile Ins. Co.* (1939), 302 Ill. App. 442, 24 N. E. (2d) 75; *Byrne v. Continental Casualty Co.* (1939), 301 Ill. App. 447, 23 N. E. (2d) 175; *People v. Luster* (1937), 292 Ill. App. 244, 11 N. E. (2d) 47; *Standard Accident Ins. Co. v. New Amsterdam Casualty Co.* (1957), 249 Fed. (2d) 847 (federal court applying Illinois law). The question of permission will, therefore, be decided by the law of Wisconsin.

The defendant's policy contained the following omnibus coverage clause:

". . . the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

This clause is substantially the same as sec. 204.30 (3), Stats.[1] The first contention of the plaintiff is that Leona Grabowski had a right, as an adult member of the household of Henry A. Smith, to give permission to others to use the Cadillac. The appellant strenuously argues that Henry A. Smith was the real insured because the policy provided coverage while the car was used for business or

---

[1] "204.30 (3) . . . The insurance hereby afforded shall not apply unless the riding, use, or operation above referred to be with the permission of the assured named in this policy, or if such assured is an individual, with the permission of an adult member of such assured's household other than . . ."

pleasure and the car was, in fact, used by Smith for his pleasure and kept garaged at his residence. We do not decide this question because, assuming Smith was the named insured or its equivalent, the determination of the case turns on the scope of the permission given by Leona Grabowski.

The appellant argues the Lincoln Manufacturing Company, through Smith, gave its permission to Leona Grabowski to use the car and, relying on *Schimke v. Mutual Automobile Ins. Co.* (1954), 266 Wis. 517, 64 N. W. (2d) 195, and *Maurer v. Fesing* (1940), 233 Wis. 565, 290 N. W. 191, concludes that Leona Grabowski, as the first permittee, had the right to permit Norton to use the car and what use he made of the car was immaterial. Passing over the question of whether Leona Grabowski was the first permittee or the second, this argument proceeds on the initial-permission rule which is grounded on the theory that when the named insured has initially given permission to another to use his auto and that person deviates from the permission granted, such use while the auto remains in the possession of the permittee is with permission under the omnibus clause, although the particular use may be for a purpose not contemplated by the named insured. This idea, but not so broadly stated, appears in *Drewek v. Milwaukee Automobile Ins. Co.* (1932), 207 Wis. 445, 240 N. W. 881. In that case, an employee of the named insureds, who were grocers, obtained permission from his employer to use a truck by falsely stating he desired to use it to haul a phonograph for himself after his regular working hours; instead, the employee hauled furniture for a friend and while so engaged, negligently caused the death of the passenger in the car. The court said this was a mere deviation from the letter of the permission and then defined permission in the omnibus clause to mean the consent obtained in the first instance from the assured to the possession

of an auto by the operator thereof regardless of the use to which he puts it while it continues in his possession by virtue of that initial consent. We think it significant the permittee was driving the car at the time of the accident.

Other states have differed in the extent to which they adopted the initial-permission rule in a broader application. For an excellent review and commentary on the rule, see Anno. Omnibus clause of automobile liability policy as covering accident caused by third person who is using car with consent of permittee of named insured, 160 A. L. R. 1195. 2 A. L. R. Blue Book, Supp. Dec. 1946–1952, p. 738; 3 A. L. R. Blue Book, Supp. Dec. 1952–1958, p. 668; 1961 A. L. R. Supp. Dec., Issue No. 5, p. 329. Wisconsin has not applied the rule of initial permission to use a car to authorize a permittee to let another person drive the car when the owner expressly forbids such delegation. *Prisuda v. General Casualty Co.* (1956), 272 Wis. 41, 74 N. W. (2d) 777. In *Locke v. General Accident Fire & Life Assur. Corp.* (1938), 227 Wis. 489, 279 N. W. 55, the court denied coverage on the ground there were no facts or circumstances to warrant an inference the named insured had any knowledge the permittee would permit anyone else to drive the car. In *Maurer v. Fesing, supra,* the named insured expressly consented to the use of the automobile for the pleasure driving of his son Lester, accompanied by one Fesing. The son allowed Fesing to drive. It was held that the policy covered Fesing because the policy covered the use of the car with the consent of the insured and in this instance the car was being used by the first permittee for the purpose given (although not driven by him) with the consent of the named insured. In permitting Fesing to drive, the son did not deviate from the use for which permission was granted.

In *Schimke v. Mutual Automobile Ins. Co., supra,* the named insured considered the car belonged to his son who

used it whenever he wanted to and who had also contributed to its purchase. The father had seen the son's friend drive the car on a number of occasions and had not objected. The court pointed out the language of the policy was broader than the statute. Under these circumstances, the court found an implied consent on the part of the father to the use and operation of the car by the friend of his son. As in the *Fesing Case,* the son or first permittee was a passenger and the driver was driving with his consent for the original purpose for which the car was being used. It may be said of these cases that under coverage specifying the "use" or "using" the car, the first permittee may delegate the actual driving of the car if it is then being used for the purpose granted which included the presence in the car of the first permittee. Generally this result is put on the theory of implied consent or permission. Lacking any facts to raise such an inference other than permission to use the car, permission to operate will not be implied. *Locke v. General Accident Fire & Life Assur. Corp., supra.* See also *Bauer v. Hardware Mut. Casualty Co.* (1961), 13 Wis. (2d) 21, 108 N. W. (2d) 271, where the daughter of the named insured was given permission to use the automobile to drive to a studio to pick up class pictures. The daughter took her friend Barbara Symes along. Arriving at the store, she left the car in a "no-parking zone" with Barbara Symes in the car. A policeman ordered her to move the car, which Barbara did and in so operating the car, had an accident. The court stated that Barbara Symes was driving the automobile at the time of the accident without the express and implied consent of the named insured, and the situation did not constitute an emergency which might have created an implied consent.

The broad language of *Drewek* that permission means consent to possession regardless of the use to which the permittee puts it has been qualified by the substantial-

deviation rule which generally applies to purpose for and place to which the car was used and also qualified by implied and express limitations on who may drive the car. Permission, in fact, may include either or both factors of purpose and driver. The question always is what was the scope of the permission.

The plaintiff argues implied permission was given by Smith because there was no restriction when he gave permission to his daughter to use the car. The defendant contends the permission granted to Leona Grabowski was restricted to using the car to learn to drive and she could not grant Norton any greater permission than for that purpose. In *Prisuda v. General Casualty Co., supra,* the court held permission to use a car may be granted on a restricted basis. In that case, the named insured, the mother, told her son not to let anyone else drive the car. On the trip, the son became tired and asked a companion to continue driving. Thereafter, the accident occurred. Coverage was denied the second permittee. The court stated that the mother had the right to grant a restricted use and since the use to which the car was being put by the permittee was not in conformity with that permitted, the coverage of the policy did not extend to the so-called second permittee.

Permission may also be restricted as to location or purpose. *Boehringer v. Continental Casualty Co.* (1959), 7 Wis. (2d) 201, 96 N. W. (2d) 353. In that case, one Morris was employed to drive a truck between his employer's place of business and a paper company, a distance of some 600 feet. This shuttle service was a continuing process all day long. He had been given instructions only to drive back and forth to the mill and not on the road. Morris, during working hours, drove the truck to his home to get his lunch, some 25 blocks away, or a total distance of approximately four miles both ways, and on this deviation had an accident. The appellant argued the application of the initial-

consent doctrine. The court thought a four-mile deviation was not a mere deviation but a substantial one and the first-instant doctrine had not been extended to the cases involving such a substantial deviation, relying on *Kitchenmaster v. Mutual Automobile Ins. Co.* (1946), 248 Wis. 554, 22 N. W. (2d) 479. In that case, a farmer boy, hired to do chores, took the farm truck without the owner's consent and drove it to a pasture to pump water for the owner's cows. After pumping the water, he came back past the farm, went to an ice-cream store in the other direction and then three miles out of his way to go past his girl's house. On this trip, he missed a curve in the road, injuring the plaintiff passenger. The boy had no driver's license but had been allowed to drive the owner's wife on some occasions to town. There was no general permission to use the truck. The court held there was no basis to infer implied permission based on the owner's knowledge of the boy's practices and even if permission to use the truck on the highway for farm purposes could be inferred, the trip to pump water for the cows was completed before the accident happened, and the trip beyond the farm was a substantial deviation from permission.

The permission granted by Smith to his daughter was to use the car to take driving lessons. It is true Smith expected within the scope of the permission that someone other than his daughter would drive the car in giving the lessons. However, we find no basis that the car could be used for other purposes or that someone not at the time giving lessons to Leona Grabowski could use the car for his own purpose. A person granting permission for the use of his car need not expressly state all the limitations. In the absence of express permission, the scope of the permission must be determined by the circumstances. The permission implied by Smith of the company's car was a limited use and under the initial-permission rule as applied in Wisconsin, the implied author-

ity to delegate permission to the use of the car by another is restricted to the same use for which the initial permission was given and which, in this case, would require the original permittee's being present in the car.

Assuming, however, Leona Grabowski could give Norton permission to drive the car to Kenosha in order to get home and to have the car repaired, washed, and simonized, still Norton's use of the car in Racine county, Wisconsin, at 12:30 a. m., some four hours after permission was given and 15 miles beyond Kenosha with other companions in the car, was a frolic and detour and was such a deviation from the permission granted as to except him from coverage as an additional insured. The permission granted Norton was not unlimited because he did not state he was going to take the car to a garage and the only instructions were to have it washed, simonized, and repaired and returned by 5 o'clock the next day. True, Mrs. Grabowski did not know where Norton was going to take the car. But she assumed he was an employee of Granger Motors, Inc., and was going to take it there and it is a reasonable inference from the facts that Norton knew this. When Norton arrived at Kenosha, he arrived at the end of his permission. No permission can be implied for using the car by Norton, a stranger, to Smith, Leona Grabowski, or the named insured, for a joy ride on Sunday night, some 15 miles north of Kenosha. This deviation is greater than that found in the *Boehringer* and the *Kitchenmaster Cases*. See also *Kowalsky v. Whipkey* (1942), 240 Wis. 59, 2 N. W. (2d) 704.

From what has been said, it is unnecessary for us to decide whether Norton obtained possession of the car through fraud. If so, the permission was vitiated. See *Potts v. Farmers Mut. Automobile Ins. Co.* (1940), 233 Wis. 313, 289 N. W. 606.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*concurring*). "We conclude that the legislature *did* intend the omnibus coverage clause for the benefit of persons injured and that it should be construed to effect that purpose." [1]

In my opinion we should not find an implied restriction upon permission except in the clearest circumstances. Under the facts presented on the motion for summary judgment, I would not find any restriction on Smith's permission to Leona, but would find an implied restriction on Leona's permission to Norton.

Smith left the car in Leona's possession. She was his adult daughter, and they lived together. He suggested she learn to drive. Under these circumstances I would have no difficulty in concluding that she had implied permission to use the car as she saw fit, including giving unrestricted permission to others.

Leona's acquaintance with Norton was very brief and solely of a business nature. She was motivated in giving permission by her desire to have the car washed, simonized, and repaired, and by Norton's statement that he had no other way to return to Kenosha. She ordered him to return it at a specified time. In my opinion a limitation on the permission can properly be implied because of these circumstances, so that the wholly different use at the time of the accident was not with permission. I concur in the affirmance solely on this ground.

I am authorized to state that Mr. Justice CURRIE and Mr. Justice DIETERICH join in this opinion.

[1] *Pavelski v. Roginski* (1957), 1 Wis. (2d) 345, 351, 84 N. W. (2d) 84.