HUMANA MEDICAL CORPORATION, d/b/a
Humana Hospital-Florence, Colonial Manor Hospital,
an Alabama corporation, Plaintiffs-Respondents,

v.

Gregory PEYER, Defendant-Appellant-Petitioner.

Supreme Court

*No. 88-0739. Argued April 24, 1990.—Decided June 19, 1990.*

(Also reported in 456 N.W.2d 355.)

For the defendant-appellant-petitioner there were briefs by *Robert L. Swanson* and *DeMark, Kolbe & Brodek, S.C.,* Racine and oral argument by *Mr. Swanson.*

For the plaintiff-respondent, Humana Medical Corporation, there was a brief by *John A. Busch, Kimberly A. Kunz* and *Michael, Best & Friedrich,* Milwaukee and oral argument by *Mr. Busch.*

DAY, J. This is a review of that part of an unpublished decision of the court of appeals that affirmed a judgment of the Circuit Court for Racine county, the Honorable John C. Ahlgrimm, Judge, that dismissed a counterclaim by defendant-appellant-petitioner, Dr. Gregory Peyer (Dr. Peyer) in an action brought by the plaintiffs-respondents, Humana Medical Corporation (Humana) for money due and owing. The counterclaim sought compensatory and punitive damages for Humana's refusal to furnish employment and performance information to the American Board of Orthopedic

Surgery, Inc. (Board) from which Dr. Peyer sought certification as a specialist in Orthopedic Surgery.

Dr. Peyer petitioned this court for review, which was granted on the sole issue of whether a hospital has a duty to provide credentialing information requested by a previously affiliated physician for Board certification purposes.

We conclude that this issue is controlled by the contract between the parties which did not obligate Humana to furnish the information. We decline to create such a requirement under a theory of "public policy." Accordingly, we affirm the court of appeals.

The facts giving rise to the controversy culminating in this review are as follows:

Dr. Peyer executed a Physician Recruitment Agreement with Humana, a private hospital in Alabama. Among other things the agreement required Dr. Peyer to be licensed in Alabama, maintain a private practice in Florence, Alabama for two years, and pay back sums loaned to him for equipment and income advances. The agreement granted Dr. Peyer full medical staff privileges at Humana Hospital, Florence/Colonial Manor Hospital, in Florence, Alabama.

At Dr. Peyer's request, after about sixteen months, Humana released him from further performance under the agreement when Dr. Peyer objected to Humana's contracting with other physicians in the area. The release was conditioned upon Dr. Peyer's agreement to repay the equipment and income loans advanced by Humana. Dr. Peyer moved to Wisconsin and sold the equipment and supplies he had purchased to his new employer. Statements and correspondence concerning his indebtedness to Humana were forwarded to Dr. Peyer. In December of 1983, Dr. Peyer paid Humana $5,000 on the loan leaving a balance in excess of $9,000.

716

No further payments were made by him. Dr. Peyer's next contact with Humana occurred in October of 1985 when he wrote to Humana requesting information concerning his employment and staff privileges needed as part of his application to the American Board of Orthopedic Surgery, Inc., from whom he sought Board certification. Humana replied it would furnish the information when he paid the balance of the money he owed Humana. Two months later, however, Humana did furnish the credentialing information to the Board at its request, despite the fact Dr. Peyer had not repaid the loans. Several months later Humana brought action in Racine county to collect the debt. Dr. Peyer interposed a counterclaim alleging a breach of duty on the part of Humana for not furnishing the credentialing information when requested and claiming damages resulting from the delay in his obtaining Board certification.

The circuit court granted summary judgment to Humana on the credentialing information issue, ruling that Humana had no duty to furnish the information. The circuit court found that Humana's actions did not affect Dr. Peyer's relationship with his patients or interfere with his ability to practice medicine and that public policy did not require a new court imposed duty to furnish the requested information. The circuit court directed a verdict against Dr. Peyer's remaining counterclaims and awarded damages of $9,888.87 to Humana plus pre- and post-judgment interest. Dr. Peyer appealed. The court of appeals affirmed the circuit court's judgment, reasoning that there was no duty recognized by law requiring a hospital to furnish credentialing information. The court of appeals found no such duty under the contract between Humana and Dr. Peyer, and it declined creating such a duty under a theory of

public policy on the ground that such a determination is more properly the function of this court.

A preliminary question is whether Alabama or Wisconsin law should be applied in resolving the issue. Neither of the parties have presented us with any Alabama statutes or case law on this issue and both in fact admit there is no applicable precedent in Alabama or Wisconsin. Because we find no applicable law in either state and therefore no conflict, the law of the forum state is presumed to apply and the matter must be resolved pursuant to Wisconsin law. In *Jensen v. Jensen,* 228 Wis. 77, 81, 279 N.W. 628 (1938), which likewise involved a potential conflict of laws question between this state and Alabama, this court stated:

> [I]n as much as the State of Alabama does not seem to have any statutes in effect at the time of the accident in relation to the duties and obligations of a host to his guest . . . and as there was no proof as to the common law of Alabama in these respects, it must be assumed that the common law of that state is the same as that of Wisconsin.

Applying Wisconsin law, we conclude this is a simple contract case governed solely by the agreement between the parties. A reading of the contract fails to show any agreement on the part of Humana to furnish this information. Humana refused to give the information to Dr. Peyer because he owed Humana money under the employment agreement, an indebtedness confirmed by the judgment in this case. But our determination is not predicated on a "just cause" refusal. Under the contract Humana simply was not obligated to furnish the information, with or without a reason.

718

Dr. Peyer's counsel argues that this court should declare a new "public policy" standard requiring hospitals such as Humana to furnish employment and performance information for purposes of Board certification. This we decline to do because the matter is one easily resolved by inserting into contracts, such as the one entered into by the parties here, a provision that the employing hospital will furnish on request reasonable certification of employment and performance information to future employers or state and local medical boards or specialty boards. While not determinative of our declining to establish a new public policy, we cannot help but note that there seems to be no great demand for court interference in this area, as shown by the lack of precedent in the field. Moreover, the refusal here was primarily due to the failure of Dr. Peyer to pay the obligation due Humana. Humana did furnish the information when requested by the Board itself even though they had not been paid by Dr. Peyer and he did obtain his Board certification.

Dr. Peyer's counsel spends four pages of his brief in a lengthy discussion of "good samaritan" law, i.e., the concept of a duty to help another in peril. We fail to see how this applied to Dr. Peyer's relationship to Humana since Dr. Peyer was in no "peril" except he did not receive Board certification quite as soon as he had hoped.

Dr. Peyer's brief also points out that in the application for staff privileges at Humana Hospital, Dr. Peyer gave consent to the release of information concerning him "to other hospitals, medical associations and other interested persons on request . . .." But this is done obviously to protect Humana from any claim by Dr. Peyer of privacy invasion or breach of confidentiality in case furnishing such information might prove detrimen-

tal to him. It's obviously done to help hospitals evaluate character and performance of physicians. But Dr. Peyer's consenting to the release of such information does not convert his employment contract into an obligation requiring Humana to furnish the requested information either to him or the Board.

Likewise, cases cited by Dr. Peyer on the duty of hospitals to inquire about professional qualifications in the selection and monitoring of their staffs does not create a duty on the part of Humana to furnish credentialing information to the Board in this case.

We note that Dr. Peyer in his letter to Humana dated October 7, 1985, requested the credentialing information be sent to him before October 31, 1985, the deadline for filing his application to the Board. On October 11, 1985, the Executive Director of Humana replied he would furnish the information "as soon as I receive your cashiers check for $9,888.87 which you agreed to pay by June 15, 1983. I have enclosed copies of your letters promising to pay by this date."

On December 19, 1985, in response to a direct request from the Board, Humana did furnish the information to the Board and Dr. Peyer later did receive the Board certification he sought. Nothing then occurred until April 30, 1986, when Humana started suit in the Circuit Court for Racine county to collect the money owed to them, a debt confirmed by the circuit court and court of appeals in this case. Dr. Peyer filed an answer, affirmative defenses and counterclaim.

While we do not conclude that the counterclaim was a diversionary tactic or not brought in good faith, we do agree with the circuit court that there is no law in either Alabama, Wisconsin, or elsewhere pointed out by the parties (or found by us) to support the claim. Likewise,

the request to create a new theory of "public policy" to justify a theory of recovery we conclude is unwarranted.

As pointed out elsewhere in this opinion, the lack of precedent indicates this case presents no need for such a drastic declaration as requested by Dr. Peyer. By a simple addition in any of these types of physician employment contracts any potential problem could be obviated.

The Doctor's brief also cites contract law to the effect that there is a duty of "good faith and fair dealing" to carry out contracts. But this contract was about employment by Humana of Dr. Peyer and his obligation to serve under it for two years and pay back monies advanced to him, neither of which occurred. The fact is he did not remain for the two years or repay the money he owed them. But even that is not the issue here. The fact is this was not a contract about furnishing information to boards of specialty certification and therefore "good faith" in performing the contract terms is not an issue.

Likewise we find no merit in Dr. Peyer's request that Humana's refusal to furnish him the information requested be viewed as a tort under a court created "public policy" declaration.

Dr. Peyer's brief concedes that no case or statute in Wisconsin or Alabama is directly in point, nor does he cite any law from any other jurisdiction directly supporting his position. His argument is that a duty should be created by this court outside the contract establishing a tort because of Humana's refusal to furnish the credentialing information. He argues that it arises from a hospital's duty to provide patients with competent medical services. He cites *Johnson v. Misericordia Community Hosp.*, 99 Wis. 2d 708, 744, 301 N.W.2d 156, 174 (1981). The hospital was found negligent for making no attempt to verify the information on a physician's application for

staff privileges and this court held that the hospital had the legal duty to review the physician's credentials. If they had checked the references they would have found the applying physician had been disciplined several times by some hospitals and never granted privileges at some of the hospitals he had listed in his application. The *Johnson* court held that a hospital owed a duty to its patients to exercise reasonable care in the selection of its medical staff and in granting staff privileges. Dr. Peyer also cites a case arising in Alabama in which the court said: "the defendants had a duty to provide the patients of Barbour County Hospital with competent professional medical services." *Woodbury v. McKinnon,* 447 F.2d 839 (5th Cir. 1971).

We are not persuaded that the duty there recognized requires the imposition of tort duty to provide credentialing information to the Board that Dr. Peyer asks this court to adopt. In *Johnson* the plaintiff was a patient who suffered injury from negligent treatment by a staff doctor the hospital had failed to investigate as to his qualifications. Whether a hospital has a duty to provide negative information that questions a doctor's competence runs parallel to the requirement that a hospital check out information of employment history furnished by a doctor seeking staff privileges is not the issue in this case. Dr. Peyer did not lose practice privileges at any hospital. To create a tort there must first be a duty to act or refrain from acting in a particular way, the breach of which causes damages to the plaintiff. We agree with the circuit court. We find no such duty under the wording of the contract nor do we see a need to create a public policy to supply the duty Dr. Peyer seeks to impose.

*By the Court.*—The decision of the court of appeals is affirmed.