KITCHENMASTER and another, Appellants, vs. MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

*March 15—April 12, 1946.*

For the appellants there were briefs by *Michael Burns* of Seymour, attorney, and *Fischer, Brunner & Strossenreuther* of Shawano of counsel, and oral argument by *Mr. Burns*.

For the respondent there was a brief by *Eberlein & Eberlein* of Shawano, and oral argument by *M. G. Eberlein, Jr.*

WICKHEM, J.  Plaintiffs assert that there was a jury question whether the truck insured by defendant was, at the time of the accident, being driven with the consent of the owner.  Defendant contends that there is no evidence in the record from which a jury could infer such consent.

The following are the facts:  On August 21, 1943, at about 9:30 in the evening, plaintiff, Leslie Kitchenmaster, was injured when a farm truck in which he was riding, and which was owned by Delbert Bishop, insured by defendant company, and driven by Charles Funk, failed to negotiate a curve in the road and struck an embankment.  Plaintiffs, Walter and Leslie Kitchenmaster, are father and son.  At the time of the accident Leslie was fifteen years old and lived with his parents. Charles Funk was eighteen years old at the time of the accident

and had started working as a farm laborer for Bishop in July, 1943. The Kitchenmaster and Bishop farms adjoin.

On the night of the accident Leslie and one Leonard Bania, who lived on a neighboring farm, went to the Bishop farm about 7:30 o'clock. Mr. and Mrs. Bishop had left and Funk was doing chores. According to the testimony of Mr. and Mrs. Bishop, the only directions to Funk were to finish the chores, and these consisted of milking the cows and turning them out of their stalls. After finishing the chores, Funk changed his clothes, and asked Leslie and Leonard to ride with him in the farm truck to some pasture land rented by Bishop and located about a mile and a half from the Bishop farm. Funk states that he told Leslie that he had to go and pump water for the cattle but did not tell him that he was really just going for a ride. It appears to have been the practice on the Bishop farm to fill the water tank every other night, and to Funk's knowledge the tank had been filled the night before. Upon arriving at the pasture the boys found that the tank was about half full of water and they took turns in pumping it full. Thereafter, Funk suggested that they go to a country store and get some ice cream. They proceeded to drive in the direction of home, left Bania at his house and passed the Bishop farm. Charles and Leslie continued to the store where they had some ice cream and bought some ice cream to take out. On leaving the store, Funk wished to drive past the home of a girl friend and he took a different route home. This was longer by three miles than the way they had come. About 9:30, while driving on a gravel road, Funk failed to see a curve, lost control of the truck and the vehicle left the road, struck an embankment and caused the injuries for which this action was instituted.

Bishop stated that he knew that Funk did not have a driver's license, and that he never gave him specific permission to use the car. Funk was hired to do general farm work and received no particular instruction as to all of his tasks. Funk used the truck on the farm whenever it was necessary in con-

nection with his work, and Bishop made no objection to such a use. On one occasion Bishop had requested Funk to drive Mrs. Bishop to town, and on a few occasions Charles had driven Mrs. Bishop to the country store with Bishop's knowledge. On no other occasions had Funk driven the car on the highway. Whenever it had been necessary to fill the tank at the rented pasture, Bishop had driven the truck, although Charles had sometimes accompanied him as a passenger.

We have given the evidence careful consideration and have come to the conclusion that Funk was driving the truck without the consent of the owner. The mere tacit consent to drive the truck about the farm, without using the public highway, would certainly not operate as a consent to the use of the truck by Funk upon the public highway. On the few occasions when Funk was permitted to drive the truck he was accompanied by Mrs. Bishop and was operating under specific directions applicable to a particular trip. He never had any specific general permission to drive the truck upon the highway for his own purposes, or, indeed, for purposes connected with the farm. Since Funk had never driven the truck on the highway except as above indicated, there is no basis for inferring a tacit permission, based upon Bishop's knowledge of Funk's practices.

Some point is made of the fact that he had a general permission to use the truck in connection with his chores and that filling the tank falls in this category, but this contention will not avail plaintiffs because, (1) all of Funk's work for the day was done when the milking was finished; (2) Funk concedes that the filling of the water tank at the rented pasture was a mere excuse to take the truck for his own purposes. Hence, even if we could spell out of the evidence an implied permission to use the truck upon the highway to discharge his farm duties, Funk would be without the permission. Incidentally, we do not think that the evidence would justify an inference that the permission was of such scope. In view of the foregoing, the following cases relied upon by plaintiffs have no tendency to

support their position: *Brochu v. Taylor,* 223 Wis. 90, 269 N. W. 711; *Christiansen v. Ætna Casualty & Surety Co.* 204 Wis. 323, 236 N. W. 109; and *Bushman v. Tomek,* 222 Wis. 562, 269 N. W. 289.

A final circumstance may be noted which appears to us to be conclusive in any case. If there had been a consent to use the truck to go to the rented pasture, the consent terminated long before the accident. After filling the tank Funk returned past the Bishop farm. At this point his trip was over. This is something more than merely deviating from a permission, and renders inapplicable the ruling in *Drewek v. Milwaukee Automobile Ins. Co.* 207 Wis. 445, 240 N. W. 881, that a mere deviation does not deprive the driver of protection under the extended coverage clause.

We conclude that the trial court rightly determined that there was no evidence of permission and that defendant insurance company sustained no liability.

*By the Court.*—Judgment affirmed.

RECTOR, J., took no part.