Rude and others, Appellants, vs. Lehman and others, Respondents.

*February 5—March 3, 1953.*

For the appellants there were briefs by *E. N. Ellingson* of Cameron, attorney, and *Harold T. Thorson* of Rice Lake of counsel, and oral argument by *George G. Blake* of Madison.

For the respondents there was a brief by *William A. Cameron* and *Howard W. Cameron,* both of Rice Lake, and oral argument by *William A. Cameron.*

FAIRCHILD, J.   The case against Lehman and his insurer depends on whether or not Lehman gave consent, either express or implied, to the use of his truck by Buhl for the trip in the course of which the collision occurred. The jury answered that there was such consent. The learned trial court changed the answer to "No." The burden of proof rests on the

appellants to establish that Lehman consented to Buhl's use of his truck on this occasion. As to express consent: From a careful examination of the record we find that Lehman testified that he had never consented to the use of his truck by Buhl for Buhl's personal affairs nor had he known of Buhl ever so using it. Buhl testified both ways. Before trial he gave a signed statement to respondents' attorney that he did not have Lehman's permission to use the truck to tow his own car, and that he had refrained from asking permission because he knew it would be refused. When he was called as a witness for appellants, he testified that he had asked Lehman for such permission and it was granted. However, on cross-examination he repudiated his entire story and testified that he had not asked permission, did not have it, and thought it would have been refused if he had asked. From a review of the testimony it is apparent that Buhl did not have the express consent of his employer, respondent Lehman, to operate the pickup truck at the time of the collision.

As to implied consent growing out of general use, it will be remembered that Lehman testified that he had not only *not* given express consent, but that he had not permitted and had not known of any use of the truck by Buhl for Buhl's personal affairs. Two witnesses, Iver B. Nelson and Merlin A. Nelson, testified that they had seen Buhl driving the truck alone. They did not know what the purpose of his trips was, and the trips were not made at such times or under such circumstances that inferences could be drawn that they were on personal and not on farm business. From such testimony it cannot be inferred that Buhl was driving for his private purposes under such circumstances and conditions that Lehman must have known and acquiesced in the trips, thereby giving implied consent for other private trips such as the one in question. The testimony of these witnesses does not even tend to contradict Lehman's unequivocal statements

that he never gave express consent or knowingly permitted the use of his truck on Buhl's own business.

Buhl's own testimony as to the general use of the car is as follows:

"*Q.* On January 6, 1950, did you drive the truck from Mr. Lehman's farm to the city of Rice Lake that morning? *A.* Yes, I did.

"*Q.* Were you alone then? *A.* Yes, I drove it from the farm to Rice Lake alone.

"*Q.* Mr. Lehman was sitting in the car with you? *A.* Not when I came to town."

However, on cross-examination, Buhl completely repudiated this testimony and admitted that he had lied. The record shows the following proceedings:

"*Q.* What happened on the morning of January 6, 1950, with reference to your driving to town with Mr. Lehman's truck? *A.* Yes, I drove it to town.

"*Q.* Were you alone? *A.* No.

"The Court: Was Mr. Lehman with you? *A.* Yes.

"The Court: Then when you were on direct examination you . . . didn't tell the truth? Will you answer that? *A.* Yes.

"The Court: You mean you told a lie? *A.* Yes."

In the decision on motions after verdict, the court said: "It is not often that it can be said definitely that a witness commits perjury, but this is one witness that it can be definitely said that at the time he testified he perjured himself." When a witness at different times gives conflicting versions of the same event, ordinarily the jury may decide which version represents the truth. In the present case, however, the witness testified that he had received express permission and that he was accustomed to use the truck for his own purposes with the owner's knowledge and consent. Immediately he reversed every material answer, saying that he had never had Lehman's permission to use the truck for his private

business and had never so used it, and finally admitted that he had been lying. We conclude that the evidence presents more than a mere conflict of testimony, to be resolved by the jury, with either version lending evidentiary support to the answer which the jury selects. The credibility of the testimony which the witness finally repudiated and which he, himself, pronounced false, was completely destroyed. Therefore, there is no credible evidence to support the answer of the jury that Buhl had his employer's consent to operate the Lehman truck. See *Brochu v. Taylor,* 223 Wis. 90, 269 N. W. 711; *Kitchenmaster v. Mutual Automobile Ins. Co.* 248 Wis. 554, 22 N. W. (2d) 479; *Zurn v. Whatley,* 213 Wis. 365, 251 N. W. 435; *Hahn v. Smith,* 215 Wis. 277, 254 N. W. 750.

We conclude that evidence that Lehman gave express or implied consent to Buhl's use of the truck is completely lacking, and that the learned trial court had no option except to change the answer in the verdict determining that consent was given, as being without the support of credible evidence. Accordingly, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.