BOEHRINGER, Appellant, v. CONTINENTAL CASUALTY COMPANY, Respondent.

*April 7—May 5, 1959.*

For the appellant there was a brief by *W. I. Rosenheimer* and *John L. Newman,* both of Milwaukee, and oral argument by *Mr. Newman.*

For the respondent there was a brief by *Boden & Lowry* of Milwaukee, and oral argument by *Robert F. Boden*.

MARTIN, C. J.   Sec. 204.30 (3), Stats., the omnibus coverage statute, provides in part:

"The insurance hereby afforded shall not apply unless the riding, use, or operation above referred to be with the permission of the assured named in this policy."

The only question raised on this appeal is whether, at the time of the accident, Morris was operating the truck with the permission of his employer, the named insured in the policy issued by Continental Casualty Company. The trial court held he was not.

Morris' employment was described in the evidence as follows: When a truck had been loaded with wastepaper at the Company—and he sometimes helped with the loading—he drove it to the Mill. There he waited until it was unloaded and then drove the empty truck back to the Company. In the meantime the second truck was loaded at the Company. After returning the empty truck to the Company he would take the loaded one to the Mill. This was a continuous process all day long. The distance between the Company and the Mill was about 600 feet and the route taken was always the same.

Charles G. Wagner, the Company foreman in charge of equipment, was Morris' supervisor. Wagner testified as follows with respect to his instructions to Morris on use of the mill trucks:

"The instructions was that he drives back and forward to the mill with those trucks and *only back and forward to the mill; they don't go on the road*. That if he got over there at twelve o'clock, come close to twelve o'clock and he had a load on, he had to wait to be unloaded, he would walk back to the factory, which is only about a five minutes' walk, punch his time card, take his full half hour and then

go back and have his truck loaded again, finish unloading the truck, see that it's unloaded and return the truck back to the factory; and *at no time was he ever to take that truck out anywhere beyond that designation.*"

Appellant argues that Morris, having permission to use the truck in the first instance—his trip to the Mill for unloading—the initial consent continued while he deviated from the letter of the permission in going home for his lunch, citing *Drewek v. Milwaukee Automobile Ins. Co.* (1932), 207 Wis. 445, 447, 240 N. W. 881.

True, this court has held that "mere deviation" from permission will not result in termination of coverage available to an additional insured under the omnibus coverage clause or statute.

In the *Drewek Case* the driver had obtained his employer's permission to use a truck after working hours upon the false representation that he wished to haul a piece of furniture for himself. Actually, he used it to haul furniture for someone else. This court observed that this was a "mere deviation from the letter of the permission" which would not in itself exclude the driver from the indemnity afforded by the insurance policy if the use to which the truck was then being put were otherwise within the coverage of the policy.

In this case the trip for which Morris had the Company's permission to use the truck was over a route covering the 600-foot distance between the Company and the Mill. The trip from the Mill to his home and back, a distance of some four miles, can hardly be deemed a "mere deviation." The "first instance" doctrine, in so far as it has been applied in this state, has not been extended to cases involving such a substantial deviation. *Kitchenmaster v. Mutual Automobile Ins. Co.* (1946), 248 Wis. 554, 22 N. W. (2d) 479.

Moreover, we have a finding by the trial court in this case that at the time and place of the accident Morris was

operating the truck "contrary to the express instructions given him by the defendant," and appellant does not deny or attack that finding. In *Prisuda v. General Casualty Co.* (1956), 272 Wis. 41, 74 N. W. (2d) 777, the named insured had given her seventeen-year-old son permission to use the automobile for a specified purpose with the express direction that he was not to let anyone else drive the car. While the car was being driven by a friend of the son, at the son's request, it was involved in an accident. This court held that the mother's consent was to a restricted use and since it was within her right to refuse permission, it must be held that she had the power to grant permission on a limited basis.

Appellant attempts to distinguish the *Prisuda Case* on the ground that the permission was limited to a specific person and that coverage did not extend to anyone else, whereas here permission was in fact given to Morris and the protection thus afforded him cannot be defeated because the truck was used for a purpose not within the contemplation of the insured when the permission was given.

We see no merit in this argument. If the insured has the power to restrict operation to a particular additional insured, he can as well restrict the operation to a particular use. In *Kowalsky v. Whipkey* (1942), 240 Wis. 59, 2 N. W. (2d) 704, the named insured employed the defendant to do odd jobs. He gave him the key to the car so that he could back it out of the garage and wash it at the garage entrance, where Whipkey had washed it several times previously. Whipkey had never before driven the car on the public streets and had been told by the insured not to do so. On the day in question Whipkey took the car out on the streets and collided with an automobile driven by the plaintiff. It was contended that the insured's handing of the car key to Whipkey operated as consent to his driving the car and brought him under the coverage

provided. by sec. 204.30 (3), Stats., citing the *Drewek Case* and others. This court, in the *Kowalsky Case,* page 64, held that in the cited cases "permission was expressly granted to drive the car on the public streets. The owners necessarily contemplated that the employees would so drive it. Here the owner did not so contemplate. The delivery of the key was merely to enable Whipkey to back the car out of the garage. No driving on the highway was contemplated by Hansen and none can be implied."

In the instant case the evidence is undisputed that Morris' permission to use the truck was expressly restricted to driving it back and forth between the Company and the Mill along the 600-foot route between the plants; that Morris was instructed by his foreman that "at no time was he ever to take that truck out anywhere beyond that designation." It was the foreman's testimony that the two old International trucks were used exclusively as Mill trucks; they were never used for pickup and delivery elsewhere:

"We don't allow those trucks to go. We need them at the factory, to keep us from being bottled up. We got to have those two trucks running back and forth all day long."

In the *Kitchenmaster Case, supra,* one Bishop, a farmer, owned a truck which was being driven by Charles Funk, Bishop's farmhand, on a public highway at the time of the accident. The evidence showed that Funk used the truck on the farm whenever it was necessary in connection with his work. Funk had never driven the truck on the highway except on a few occasions when specifically requested to do so, and when accompanied by the named insured or his wife. On the occasion in question, without Bishop's knowledge, Funk drove the truck to a pasture about one and a half miles from the farm and filled the water tank. Thereafter, he took the truck on the highway on a purely personal mission, and struck an embankment. It was argued that

Funk had general permission to use the truck in connection with his chores, including filling the pasture tank. The evidence showed that previously when it had been necessary to fill the tank at the pasture Bishop had driven the truck, sometimes with Funk as a passenger. This court held that there was no implied permission to use the truck upon the highway to discharge Funk's farm duties, but (p. 558)—

"If there had been a consent to use the truck to go to the rented pasture, the consent terminated long before the accident. After filling the tank Funk returned past the Bishop farm. At this point his trip was over."

The court stated that the circumstances showed something more than merely deviating from permission, making the decision in the *Drewek Case, supra,* inapplicable.

In the instant case the facts are even stronger. Not only was Morris' trip home a substantial deviation, but it was undertaken in violation of the Company's express instructions that the truck was never to be taken anywhere "on the road" outside of the customary route between the Company and the Mill.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). I would reverse the judgment. The insured placed Morris in control of the truck for the purpose of operation upon the highway. The Insurance Company had agreed to cover pleasure as well as business use. Plaintiff had the misfortune of being injured after Morris had left the designated route. In my opinion the legislature enacted the omnibus coverage requirement for the benefit of members of the public injured by negligent operation of an insured automobile as well as for the protection from liability of one who operates it with permission. *Pavelski v. Roginski* (1957), 1 Wis. (2d) 345, 84 N. W.

(2d) 84. The word "permission" should be liberally construed to carry out the legislative purpose. When an injury occurs after a driver has been given permission to operate a car on the highway a general instruction never to go any farther than expressly directed and the fact that the driver has ordinarily made only a limited use of the car should be given no weight. I am satisfied that protection of an injured plaintiff in the circumstances of this case falls within the legislative intent.

I am authorized to state that Mr. Justice CURRIE and Mr. Justice DIETERICH join in this dissent.