**ROYAL INDEMNITY COMPANY, Appellant,**

v.

**H. E. ABBOTT & SONS, INC., Appellee.**

No. 11321.

Court of Civil Appeals of Texas.

Austin.

June 23, 1965.

Rehearing Denied July 14, 1965.

Upton, Upton, Griffis, Shannon & Porter, James D. Johnson, San Angelo, for appellant.

Blanks, Thigpin, Logan, Steib & Lewis, S. Ancial Middlebrook, San Angelo, for appellee.

ARCHER, Chief Justice.

This was an action on an automobile liability insurance policy brought by appellee, a building owner, directly against appellant insurance company to recover for damages to appellee's building inflicted by one alleged to have been operating the insured pickup truck with the implied permission of the named insured so as to be an omnibus insured under the policy. Trial to a jury resulted in a jury finding of implied permission and a judgment for appellee from which this appeal has been taken.

The points relied upon for reversal of this case are:

"FIRST POINT: The court erred in submitting special issue No. 1 to the jury over appellant's timely objection that there was no evidence to support said issue, which read as follows:

'Do you find from a preponderance of the evidence that when George Kenneth Landers was operating the vehicle belonging to Jack Herring on or about July 27, 1963, he, the said George Kenneth Landers, did so with the implied permission of the said Jack Herring?

Answer: Yes or No.
Answer: —————'

SECOND POINT: The court erred in rendering judgment for appellee on the verdict for the reason that the evidence is insufficient to support the jury's finding that the vehicle was used with the implied permission of its owner at the time of the collision.

THIRD POINT: The court erred in admitting the testimony of the witness, George Kenneth Landers, to the effect that he did not think he was stealing the truck when he drove it off, over appellant's timely objection that said testimony was a conclusion of the witness, was conjectural and invaded the province of the jury.

FOURTH POINT: The court erred in admitting the testimony of the witness, George Kenneth Landers, as to whether or not he thought he had permission to drive the vehicle in question under a hypothetical set of facts stated by counsel, over appellant's timely objection that the testimony was a conclusion of the witness, invaded the province of the jury and was based on a hypothetical state of facts, none of which were in evidence and amounted to a statement of the mental processes of the witness as to what he thought about a particular situation rather than something he said or did."

Jack Herring employed Landers as a ranch hand on Herring's ranch about 14 miles from Ballinger, Texas, at $135.00 a month plus room and board, and for a time Landers did his own cooking and lived in a small house near the ranch house and later began taking his meals with the family.

Herring owned three motor vehicles, a passenger car, a 1961 pickup and a 1955 pickup, the latter was not licensed and was for use on the ranch premises, and Herring ordinarily used the 1961 truck. Landers had permission to drive the 1955 truck, and if it was out of repair could use the 1961 truck on the ranch which was parked behind the ranch house when not in use and the 1955 model was usually left around the barn, and the keys to both vehicles were customarily left in them. Herring had ascertained that Landers had a driver's license before his employment.

Prior to the date of the accident Landers had not, to Herring's knowledge, taken any of the vehicles off the premises except on three or four occasions. When told to do so Landers had picked up the Herring children at the school bus stop about four or six miles from the house, partly over a private road and a part over a public highway.

On Saturday afternoon, July 27, 1963, the date of the accident Herring and Landers had gone to Bronte to the races and Herring did the driving and returned at about 4:00 p. m. Later in the evening the Herring family went to Big Spring to spend the night with friends.

About 7:00 p. m. Landers took the 1961 truck and went to San Angelo where he collided with appellee's building.

Herring learned of the accident and threatened to "beat the stuffing" out of Landers and might file charges against him, but finally told Landers "If he would do right about it and work it out, well he could stay." Landers did stay for about nine months and did pay for the repairs on the truck in the sum of $400.00.

The subject of Landers using the vehicles off of the ranch did not come up and Herring had never expressly instructed Landers to use the vehicles off the ranch, and had never, before the collision, expressly forbidden Landers to use the 1961 truck.

This is a case of no evidence to support a submission of the question of implied permission to the jury.

It is further contended by appellant that the evidence is insufficient to support the finding of the jury, and the judgment rendered on the verdict is erroneous.

■ We must consider the evidence and the inferences to be properly drawn therefrom in the light most favorable to the party for whom the verdict and judgment was favorably entered, and accept the verity of the testimony tending to support the verdict. Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208; O'Hara v. Ferguson Mack Truck Co., Inc., Tex.Civ.App., 373 S.W.2d 507, er. ref., n. r. e.; State & County Mutual Fire Insurance Company v. Kinner, Tex.Civ.App., 314 S.W.2d 871, aff'd., 319 S.W.2d 297.

■ Express permission is not necessary in order for a driver of a non-owned vehicle to be covered; such permission may be implied. Employers Mutual Casualty Company of Des Moines v. Mosqueda, 317 F.2d 609 (5th Cir. 1963); 7 Appleman Ins. Law and Proc., § 4365 at page 303; 45 C.J.S. Insurance § 829, p. 884.

"Implied Permission is actual permission circumstantially proved." Stoll v. Hawkeye Cas. Co. of Des Moines, Iowa, 193 F.2d 255 (8th Cir. 1952).

■ Facts creating an implied permission invariably must be proved by circumstantial evidence, inasmuch as little or no direct evidence can ever be produced.

We then examine all of the facts as developed in the trial court in the light of the above definitions to determine whether implied permission was shown.

In view of the conduct of the parties there was more than a mere employer-employee relationship between Herring and Landers. Landers was allowed privileges in the ranch home, when Mrs. Herring was away during the day Landers could fix his dinner, which he did lots of times. Herring testified:

"Q Mr. Herring, on Saturday, July 27th, 1963 when you and Mr. Landers went to Bronte, did you have any particular reason for going over there?

A Went to the horse races.

Q Had you done that before?

A Yes, sir.

Q On Saturday at the ranch did you ordinarily work or what was the situation?

A Well, not unless there was something that needed to be done say fairly bad, or if it didn't make any difference, well, we'd put it off until Monday.

Q Now, did I understand you to say that Mr. Landers after a time, at least, took most of his meals in the house with you and your family?

A Yes, sir.

Q Did he actually have the run of your house?

A Well, in fact, about the meals, maybe my wife was gone, and we have a little girl that has cerebral palsy, my wife takes her to Abilene three times a week, and she is always late coming in for dinner, and lots of times when Ken had time he'd come in and fix it himself, so I'd say he did have privileges in the house.

Q When you left to go to Big Spring on this particular Saturday you took your family with you?

A Yes, sir.

Q Did you have any conversation with Mr. Landers prior to leaving about what he was going to do or about using the pickup?

A No; he was supposed to have had a girl friend in Abilene that was supposed to come and see him that night and take him to San Angelo. I mean they were going to San Angelo, she had a car, and that's all I knew about what they might be doing. Of course, the next day was Sunday, no work or anything, and I was coming in the next day anyhow; so as far as telling him to do anything, I didn't, that afternoon.

Q And Sunday was ordinarily a day off also?

A Yes, sir.

Q Now, was the pickup that he actually went to town in your 1961 pickup?

A Yes, sir.

Q He didn't go in that old one?

A No, sir.

Q And as you previously testified your arrangement with him was that generally for doing his work on the ranch premises he used the old pickup?

A Yes, sir.

Q Except that if it wouldn't run and you weren't using the 1961 pickup then he would use it on the ranch?

A That's correct."

The vehicles were available to Landers with the keys in them so he could use the 1961 pickup if the need arose.

In Truck Insurance Exchange v. Ballard, Tex.Civ.App., 343 S.W.2d 953, er. ref., n. r. e., this Court discussed the question of implied permission.

The appellant cites Kitchenmaster v. Mut. Auto. Ins. Co. of Herman, 248 Wis. 554, 22 N.W.2d 479 as being in point.

In Kitchenmaster the driver of the car did not have a driver's license and it cannot be thought that the owner of a car would have permitted an unlicensed driver to drive on public highways.

■ The fact that Herring, after the accident, continued the employment of Landers and never expressly prohibited Landers from using the vehicles is a circumstance of implied permission that could be considered.

In United States Fidelity & Guaranty Co. v. Brann, 297 Ky. 381, 180 S.W.2d 102, cited by appellant, both the driver and the owner of the automobile testified that the driver had no permission to drive the automobile.

■ We believe the evidence was sufficient to raise the issue of implied permission and to base a judgment on.

Appellant's points Nos. 3 and 4 are directed to the error of the court in admitting the testimony of Landers to the effect that he did not think he was stealing the truck, and as to whether he thought he had permission to drive the truck.

The testimony complained of is:

"Q Well, you didn't think you were stealing the truck, did you, when you drove off?—

MR. JOHNSON: May it please the Court, I will object to that question as calling for a conclusion of the witness, conjectural, invades the province of the jury.

THE COURT: I will overrule the objection.

MR. STEIB: The question was (reading):

Q Well, you didn't think you were stealing the truck, did you, when you drove off?

A No, sir.

Q Mr. Landers, what arrangement do you have with Mr. Herring, let's say you are out there working on the ranch and you need a shot of penicillin for some of the livestock and Mr. Herring isn't around, do you think you have got permission to drive that vehicle and get that penicillin?

MR. JOHNSON: May it please the court, I will object to that question as well as the two following it, for the reason that all of them ask for conclusions of the witness, invades the province of the jury; they are based upon a hypothetical state of facts, none of which are in evidence in this case; they call for, again, the mental processes of what the witness thought about a situation rather than some material facts as to something he said or did, and are all improper.

MR. STEIB: Now, the last question on Page 14, I don't think there is an answer to it, it was withdrawn, and I agree that reading of the question would not be indicated, I don't intend to read it.

THE COURT: Overrule the objection to the question read.

MR. STEIB: All right. The answer to that question was (reading):

A Well, I don't know. If I thought they needed it I'd go get it."

■ We do not believe the court erred in admitting the above testimony. As a general rule a witness may testify as to his own intention or other state of mind where the same is material. 2 McCormick & Ray, Texas Law of Evidence, § 1428; 23 Tex.Jur.2d Evidence, § 504.

■ The witness was asked as to his intent at the time he took the truck,—did he intend to steal it; this was not an ultimate issue of fact, other considerations were necessary before implied permission could be found by the jury and the jury could have found, even though it believed that Landers did not intend to steal the truck, could have found no implied permission, such testimony is not conclusive. Reed v. Reed, 303 S.W.2d 460, rev'd. on other grounds, 158 Tex. 298, 311 S.W.2d 628.

The witness' own idea of what he had authority to do in a particular instance was not an ultimate fact, but rather a part of the surrounding circumstances tending to support a finding of implied permission. Universal Underwriters Lloyds v. Sulik, Tex.Civ.App., 301 S.W.2d 690, er. ref., n. r. e.

The judgment of the trial court is affirmed.