Pavelski and another, Plaintiffs and Appellants, vs. Roginski, Defendant and Appellant: General Casualty Company of America, Defendant and Respondent: Great American Indemnity Company of New York, Interpleaded Defendant and Appellant.

Prust and others, Plaintiffs and Appellants, vs. Sweet and others, Defendants and Appellants: General Casualty Company of America, Defendant and Respondent.

*June 4—June 26, 1957.*

For the appellants there was a brief by *Rhyner, Hosek & Zappen* of Marshfield, for Della Pavelski, by *John S. Crawford* of Marshfield, for Gilbert F. Sweet, by *Pors & Pors* of Marshfield, for the Great American Indemnity Company of New York, by *Schiro, Tusa & Schiro* of Milwaukee, for Orville F. Roginski, and by *Walter J. Steininger* of Milwaukee, for Jerome Prust, Donald Meyer, and Larry Roginski, infants, Alvin J. Olszyk, their guardian *ad litem,* and Jacqueline Roginski, and oral argument by *Charles M. Pors.*

For the respondent there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Richard P. Tinkham.*

FAIRCHILD, J.   The circuit court was of the opinion that the instant case is not distinguishable from *Quin v. Hoffmann* (1954), 265 Wis. 636, 62 N. W. (2d) 423. The appellants urge that the two cases are distinguishable because the insured in the *Quin Case* must have known his brother had no

license permitting him to drive at night, because of his age, and the insured in the instant case asserts that he had no knowledge or reason to know that his brother Donald was not properly licensed. In the *Quin Case* this court held that an insured who gave permission to one who had no license to drive violated sec. 85.08 (39), Stats. Appellants claim that in the instant case there is at least a jury issue as to whether Orville Roginski knew that Donald was unlicensed and that if he did not know, he was not violating sec. 85.08 (39). Respondent points out that even if an owner does not violate sec. 85.08 (39) unless he knows that the person whom he permits to drive does not have a proper license, the person permitted so to drive nevertheless violates sec. 85.08 (3). Furthermore the reasoning of the court in the *Quin Case* was that it would be good public policy to deprive an unlicensed person of the protection of the policy of the automobile liability insurance issued to the owner. It was thought that such deprivation would act as a deterrent to unlicensed drivers. That reasoning would not be logical if the *Quin* decision was intended to apply only where the owner had knowledge that the other driver was unlicensed. Therefore we agree with the circuit court that the cases are not distinguishable.

We are impelled, however, to reconsider the basis of the decision in the *Quin Case*. The court adopted a narrow construction of the word "permission" as it appears in the omnibus coverage clause required by sec. 204.30 (3), Stats. This court construed the word "permission" to mean "permission legally granted," and also, in line with what is said above, "permission to one legally authorized to drive." As has been said, the reason for so limiting the word "permission" was the court's view that it would be good public policy to deny the unlicensed driver the protection of the owner's policy. The court recognized that in so doing it denied persons injured the right to recover from the insurance

company, but concluded that protection of the driver as an additional insured was the purpose of the omnibus coverage clause, not the protection of persons who might be injured as a result of negligence in the operation of an insured vehicle.

The *Quin Case* was decided February 2, 1954. In the 1955 session of the legislature the omnibus coverage clause was amended by ch. 349, Laws of 1955. By its terms permission is "to be deemed permission without regard to sec. 85.08 (39) or to whether the riding, use, or operation is authorized by law." The legislature evidently disagreed with the court's conclusion as to the desirable public policy. The amendment became effective July 9, 1955, however, and there are cases still in litigation which involve unlicensed drivers and arose prior to the amendment. Besides the instant case, an example is *Behringer v. State Farm Mut. Automobile Ins. Co.* (1957), 275 Wis. 586, 82 N. W. (2d) 915, disposed of on grounds which made reconsideration of the *Quin Case* unnecessary.

An examination of the history of legislation with respect to provisions of automobile liability insurance policies convinces us that in the case of omnibus coverage the legislature was in fact concerned with increasing the number of injured persons who could recover under insurance policies and that the protection of the additional insured was not the sole object of the law.

In 1925 the requirement of omnibus coverage contained in sec. 204.30 (3), Stats., was created by ch. 372, Laws of 1925. The same chapter created sub. (1) of sec. 204.30, requiring every policy to contain a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injuries or loss and that in case execution against the insured is returned unsatisfied in an action brought by or on behalf of the injured person then an action may be maintained against the insurer. Thus in the same act which created the

omnibus coverage requirement the legislature was making available to an injured person a recovery from the insurer under circumstances where he would not otherwise be able to recover.

At the same session ch. 341, Laws of 1925, had been enacted providing that every policy of automobile liability insurance must be construed to provide that the insurer shall be liable to the persons entitled to recover for death or injury caused by the negligent operation of a vehicle. This provision, now found in sec. 85.93, Stats., together with the portion of sec. 260.11, created by ch. 375, Laws of 1931, permits an injured person to sue the insurance company directly. While direct suit may be of some value to the named or additional insured, it is more obviously intended for the benefit of the persons injured.

In 1931, ch. 477 created sec. 204.33, Stats., now numbered as sec. 204.34. This section forbids certain types of exclusions from coverage. An insurance company and an insured cannot agree on an exclusion so that there is no coverage while the driver is under the influence of intoxicating liquors or narcotics. The same section forbids an exclusion of operation of the automobile for unlawful purposes. It is clear that the legislature was more concerned with the interest of members of the public who might be injured under such circumstances than it was in protecting persons, driving under the influence of liquor or narcotics or using automobiles in unlawful pursuits, from having to pay damages.

While the rule of comparative negligence is not restricted to negligence in the operation of automobiles, it is of interest to note that that rule was also adopted by the 1931 session, ch. 242, Laws of 1931.

More-recent enactments, beginning in 1941, have created and amended those parts of sec. 85.09, Stats., which are now known as the Safety Responsibility and Financial Respon-

sibility Laws. The legislature has decided that the public welfare requires that persons injured by negligent operation of automobiles be provided some means of recovery and that automobile liability insurance is acceptable as a substitute for the posting of money or other security by one who has caused such injuries. It is of course correct, as stated in the decision in *Witzko v. Koenig* (1937), 224 Wis. 674, 272 N. W. 864, that the obligation of automobile liability insurers remains basically contractual. One must still show that negligence caused the injury before he can recover. The legislature has never made the carrying of automobile liability insurance a universal requirement of operating an automobile. Nevertheless, within the patterns of liability based on fault and of freedom of choice concerning insurance, the enactments referred to have been steps in the direction of spreading the financial consequences of injury and death caused by motor vehicles among those who own and operate them.

We think, accordingly, that the premise upon which the *Quin* decision was based was in error. We conclude that the legislature *did* intend the omnibus coverage clause for the benefit of persons injured and that it should be construed to effect that purpose. We therefore overrule the *Quin* decision.

*By the Court.*—Judgments reversed, causes remanded for further proceedings not inconsistent with this opinion.