DERUSHA and another, Respondents, v. IOWA NATIONAL MUTUAL INSURANCE COMPANY, Appellant. [Case No. 253.]

GRANBERG, Respondent, v. IOWA NATIONAL MUTUAL INSURANCE COMPANY, Appellant. [Case No. 254.]

*Nos. 253, 254. Argued November 6, 1970.—Decided December 1, 1970.*
(Also reported in 181 N. W. 2d 481.)

From an interlocutory judgment entered following the announcement of the trial court's findings of fact and conclusions of law defendant appeals.

For the appellant there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm* of Green Bay, and oral argument by *John C. Whitney.*

For the respondents there was a brief by *Murphy & Murphy* of Marinette, for Alf Granberg, and by *Norman B. Langill* of Marinette, for Thelma and Lance Derusha, and oral argument by *Arnold F. Murphy.*

WILKIE, J. This is a fact case. The sole issue on this appeal is whether the trial court's finding that Gary Peterson was driving with permission as required by the omnibus coverage clause of the policy is against the great weight and clear preponderance of the evidence.[1]

In reviewing the record we do not reverse just because we find some evidence to support a contrary finding.[2] We must be satisfied that the finding is against the great weight and clear preponderance of the evidence.

Under the omnibus clause required to be included in all automobile policies in Wisconsin,[3] permission to drive may be granted to any person by the insured or an adult member of his household. The burden of proving the requisite permission rests with the party seeking to establish coverage.[4] This permission may be implied as well as actual,[5] however, and whether the permittee is in possession of a valid operator's license is of no conse-

---

[1] *Strozewski v. American Family Mut. Ins. Co.* (1970), 46 Wis. 2d 123, 127, 128, 174 N. W. 2d 550.

[2] *First Credit Corp. v. Behrend* (1969), 45 Wis. 2d 243, 172 N. W. 2d 668.

[3] Sec. 204.30 (3), Stats.

[4] 12 Couch, *Insurance* (2d ed.), p. 365, sec. 45:363.

[5] *Foote v. Douglas County* (1966), 29 Wis. 2d 602, 139 N. W. 2d 628.

quence.[6] This implied consent depends on the state of mind of the permitter,[7] but it may be proved by circumstantial evidence. In effect, implied permission is but actual permission circumstantially proven.

It is also well settled that these clauses will be broadly interpreted since the statute requiring them is remedial in nature: [8]

> "Omnibus coverage insurance . . . is, in part at least, for the benefit of the injured party, *Pavelski v. Roginski* (1957), 1 Wis. 2d 345, 84 N. W. 2d 84; the purpose thereof is to increase, rather than restrict, coverage, *Groth v. Farmers Mut. Automobile Ins. Co.* (1963), 21 Wis. 2d 655, 124 N. W. 2d 606; and, this court is committed to a broad or liberal construction of 'permission' as used in the omnibus clauses, required to be included in automobile liability policies. Sec. 204.30 (3), Stats. *Krebsbach v. Miller* (1963), 22 Wis. 2d 171, 125 N. W. 2d 408." [9]

It is in light of this policy that this court will determine whether the findings of the trial court were against the great weight and clear preponderance of the evidence,[10] and this, whether this court in reviewing might find credible evidence supporting a contrary finding.[11]

At the trial the following evidence was adduced:

Mr. Peterson was employed as a seaman on the Great Lakes and was at home during the winter months. During the winter of 1968–1969 he undertook teaching his son to drive. He testified he had allowed his son to drive while he himself was in the car, on country roads seven

---

[6] *Pavelski v. Roginski* (1957), 1 Wis. 2d 345, 84 N. W. 2d 84.

[7] *Dahlke v. Roeder* (1961), 14 Wis. 2d 582, 587, 111 N. W. 2d 487.

[8] *Nelson v. Ohio Casualty Ins. Co.* (1966), 29 Wis. 2d 315, 139 N. W. 2d 33.

[9] *Foryan v. Firemen's Fund Ins. Co.* (1965), 27 Wis. 2d 133, 141, 133 N. W. 2d 724.

[10] *Strozewski v. American Family Mut. Ins. Co., supra,* footnote 1.

[11] *First Credit Corp. v. Behrend, supra,* footnote 2.

or eight times, and had allowed him to drive the car in and out of the garage and on the driveway some 50 times. He also testified, however, that he had no knowledge of Gary's ever operating the car alone, except in the driveway, that he had told Gary never to drive unless accompanied by him, and that his first knowledge that Gary ever drove the car alone was after the accident. He stated he did not reprimand Gary at the time of the accident, but that he did so a few days later.

He further testified that keys for the car were often left on the table or buffet in the dining room; that Mrs. Peterson and the two daughters frequently drove the cars, although the girls were required to obtain permission before doing so.

Mrs. Peterson testified that she had no knowledge that Gary was receiving driving lessons from her husband or that he ever drove the car alone. She further testified that she had never warned Gary against driving the cars since she assumed he wouldn't because of his age. She also stated that neither she nor her husband reprimanded Gary at the time of the accident because he was "shook up," but that he was reprimanded later.

Gary testified that, in addition to those times he drove with his father, and in the driveway of his home, he also drove the Corvair alone once or twice and had driven the Chrysler alone three or four times, all prior to the accident. He testified that his mother was unaware that he drove either of the cars even in the driveway and that on those occasions when he drove the cars alone on short trips in town he had waited until his mother was away to do so; that his father was also never home when he did so, and that he had never told his father of his solo drives since his father had specifically instructed him not to drive alone. He stated that on the day of the accident, when he took the keys from the buffet in the dining room, his mother was upstairs sleeping,

his father was away from the house, his married sister was not at home nor in a position to see him, and that he did so knowing it was against his father's instructions.

Three witnesses testified they had seen Gary driving the car alone on certain occasions prior to the accident. One testified he saw the boy driving on the day of the accident.

Viewing this evidence in the light most favorable to the trial court's findings we are satisfied that those findings are not against the great weight and clear preponderance of the evidence.

True, most of the evidence supporting those findings which back up the trial court's conclusion of permission was circumstantial, not direct, but is sufficient nevertheless.

There is much evidence of prior use of the automobile by Gary, alone. Gary and his father both admitted that the boy had operated the car in the driveway of the family home. The father admitted it might have been as many as 50 times. This, standing alone, does not establish permission. Permission may be limited [12] and we need to look further at the record to establish permission to operate the car beyond permission to drive in the driveway.

Three persons testified that they had seen Gary driving the Chrysler alone (on Marinette streets) on several occasions prior to the accident. One saw him doing so on the very day of the accident. Gary admitted driving both the Chrysler and Corvair alone on several occasions. This is evidence tending to show permissive use. In *Christiansen v. Aetna Casualty & Surety Co.*[13] the permittee, who resided with his uncle, had previously driven his uncle's car with permission. The uncle then, for some

---

[12] *See generally: Harper v. Hartford Accident & Indemnity Co.* (1961), 14 Wis. 2d 500, 111 N. W. 2d 480.

[13] (1931), 204 Wis. 323, 236 N. W. 109.

reason, forbade further use of the car, even dismantling the car when he went away on a trip. He reassembled it on his return but testified he again expressly forbade its use by his nephew. Several witnesses testified to seeing the boy driving the car as frequently as once or twice a week, during the period he was forbidden to use it. As to the value of the testimony of these witnesses, the court stated:

". . . This testimony was admissible as establishing custom or usage in the nature of general consent." [14]

". . . Conceding that these circumstances justify the inference of consent, the positive testimony to establish a contrary conclusion cannot destroy the probative force of such circumstances. Such evidence might overcome them, might outweigh them, but it cannot take them out of the case. No matter what evidence is placed on the other side of the scales, this evidence remains . . . ." [15]

There is evidence here that the use of the cars by Gary alone extended at least to streets of Marinette. But use is not enough all alone to establish permission. Some knowledge on the part of Mr. Peterson, or any adult member of his household, is required. The permission, even if implied, requires some awareness, since permission arises from the "acts, words, or conduct of the permitter." [16] ". . . Mere presumption that permission had been given or would be given if asked is not enough." [17] This "knowledge" or awareness of the conduct may be inferred, as here, fom the circumstances surrounding it.

In addition to the circumstances surrounding Gary's use of the Peterson automobile, the trial court's determination of permission must be examined in view of the fact that there was here a close blood relationship between the father-insured and the son-permittee. Courts

[14] *Id.* at page 326.
[15] *Id.* at page 327.
[16] *Dahlke v. Roeder, supra,* footnote 7, at page 587.
[17] *Id.* at page 588.

have often placed considerable emphasis on relationship.[18] The California courts have stated:

"Where the issue of implied permissive use is involved, the general relationship existing between the owner and the operator, is of paramount importance." [19]

And the South Carolina court has stated:

"The relationship of the parties may reasonably infer an implied consent which will keep an insurance policy in force for the protection of the motoring public even though the owner denies giving consent. . . ." [20]

In this case we have a family relationship, that of father and son. While more than the blood relationship is required to establish permissive use,[21] there is uncontroverted evidence here that in this relationship the father undertook to teach his son how to drive, not only in the driveway at home but also on country roads; all this even though there is no evidence that the son had a learner's permit as required by law. The father further encouraged the son's use of the car, albeit limited, by having him operate the car in and out of the garage and in the driveway. He purchased another car for the

---

[18] E. g., Wilson v. Hartford Accident & Indemnity Co. (1967), 272 N. C. 183, 158 S. E. 2d 1 (strong social relationships and ties are relevant). In discussing the area of implied permission in omnibus coverage cases, treatise writers often distinguish between the various kinds of relationship: e.g., 12 Couch, Insurance (2d ed.), sec. 45:354. Sufficiency of permission in favor of employee; sec. 45:355. . . . of business relation other than employee; sec. 45:356. . . . in favor of relative or friend; sec. 45.357. . . . in favor of stranger.

[19] Elkinton v. California State Automobile Asso. (1959), 173 Cal. App. 2d 338, 344, 343 Pac. 2d 396.

[20] St. Paul Fire & Marine Ins. Co. v. American Ins. Co. (1968), 251 S. C. 56, 60, 159 S. E. 2d 921.

[21] 12 Couch, Insurance (2d ed.), p. 360, sec. 45:356; Beatty v. Hoff (1955), 382 Pa. 173, 114 Atl. 2d 173. See also: Dahlke v. Roeder, supra, footnote 7; Main v. Cameron (1961), 13 Wis. 2d 15, 108 N. W. 2d 142.

son "to tinker with," and on at least one occasion, while not in the proximity of the home, gave his son the keys to this car on request, without any question or admonishment. On the day of the accident, no reprimand was heard from the father.

Hence we have not only a blood relationship, but a close one, especially as involving the use of an automobile.

Such a relationship may substantially reduce the practical burden of proof:

". . . Where, for example, the parties are related by blood . . . weaker direct evidence will support a finding of such use than where the parties are only acquaintances . . . .

"Where, as in the instant case, the relationship between the owner and operator is that of a parent and child, the evidence should be reviewed in the light of the authority which the law confers upon the parent to control the child, and the authority to administer restraint and punishment in order to compel obedience . . . . If parents are indifferent to their parental obligations in this regard, their children are apt to accept such indifference as tacit permission to do acts which should, under the circumstances, have been controlled or forbidden. Juries are entitled to draw the same inference." [22]

We think that the relationship here reduced the practical burden of proof of these plaintiffs to show that Gary had permission.

While the use was broad enough to imply permission on this occasion, particularly in view of the close blood relationship of the father-permitter and the son-permittee, there are other circumstances established by the record which point to a finding of permission.

The Petersons all admitted that the keys to the cars were readily accessible. They were often left on the

[22] *Elkinton v. California State Automobile Asso., supra,* footnote 19, at pages 344, 345.

table in plain view, where anyone might pick them up. Gary in fact had no difficulty in taking the keys on the day of the accident, nor indeed on any of the other occasions when he drove the car alone. Further, on at least one occasion the father freely gave Gary the keys to the Corvair, evidently without question or admonishment, even though he was not in a position to view the use Gary would make of them.

The Petersons admit that Gary was not reprimanded at the time of the accident. Obviously this alone is not controlling, but it is a relevant factor to be considered,[23] and in light of the other circumstances may have weighed adversely against them.

Of great weight in this instance is the clear and unequivocal statement by the trial court that it did not believe the Petersons when they testified that Gary had specifically been told never to drive the car alone and that they had no knowledge of his ever having done so. In its findings the trial court stated:

"30. This testimony, however, I believe to be wholly incredible. When compared to the uncontroverted circumstances, it doesn't take any great mental search to find that this testimony is strongly suspect, reeks of fabrication and is unbelievable. I so find."

This court has repeatedly held that the question of whether the use was with permission of the insured is a question of fact.[24] In cases such as this, the credibility of witnesses and the weight to be given to their testimony is for the trial court, and where more than one reasonable inference might be drawn, this court will ac-

[23] *Home Indemnity Co. v. Norton* (7th Cir. 1958), 260 Fed. 2d 510.

[24] *Foote v. Douglas County, supra,* footnote 5; *Schneck v. Mutual Service Casualty Ins. Co.* (1963), 18 Wis. 2d 566, 119 N. W. 2d 342; *Christiansen v. Aetna Casualty & Surety Co., supra,* footnote 13.

cept the one drawn by the trier of fact.[25] The trial court is in a better position to make a judgment concerning credibility, a judgment so made will not be disturbed.[26]

Here the trial court indicated sound reasons why it did not believe their testimony: the "staggering circumstances indicating the contrary; . . . their probable motive to deny; their action in anticipation of trial, *i.e.*, the father taking off the whole shipping season;[27] the mother mysteriously not available for an adverse examination and available for trial only when strenuously pressed, gives assurance to assume the truth of what they deny."

In light of all the circumstances, and in light of the trial court's disbelief of the Petersons' testimony, the finding of use with permission must stand. The upholding of such a verdict based on circumstantial evidence in the face of the most firm and unequivocal denials is not at all unusual,[28] and is warranted here, especially when this court's broad interpretation of the omnibus coverage provisions is considered.

*By the Court.*—Judgment affirmed.

---

[25] *Hanz Trucking, Inc. v. Harris Brothers Co.* (1965), 29 Wis. 2d 254, 138 N. W. 2d 238.

[26] *Moonen v. Moonen* (1968), 39 Wis. 2d 640, 159 N. W. 2d 720.

[27] There was evidence he had been advised the case would not come to trial before the winter months.

[28] *See especially: Schneck v. Mutual Service Casualty Ins. Co.,* *supra,* footnote 24, at pages 326, 327; *St. Paul Fire & Marine Ins. Co. v. American Ins. Co.,* *supra,* footnote 20, at pages 59, 60. *See also: Stepnowski v. Empire Mut. Ins. Co.* (1965), 23 App. Div. 2d 716, 257 N. Y. Supp. 2d 221.