Meghan MESHBESHER, a minor, by Russell M.
Spence, Guardian ad Litem, Plaintiff-Appellant,

Marcia E. MESHBESHER, mother and natural guar-
dian, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Defendant-Respondent,

Amantha J. ELDER, American Economy Insurance
Company, State Farm Fire & Casualty Insurance Com-
pany, Irwin B. Meshbesher, American States Insurance
Company, Compcare Health Services Insurance
Corporation, and Wisconsin Physicians Service
Insurance Corporation, Defendants,

Susan M. BIEBL, Defendant-Third Party Plaintiff-Co-
Appellant,

v.

Selmer BAKKESTUEN, Third Party Defendant.

Court of Appeals

*No. 89-1875. Orally argued May 24, 1990.—Decided July 26,
1990.*

(Also reported in 459 N.W.2d 615.)

473

For plaintiff-appellant Meghan Meshbesher the cause was orally argued by *Michael Snyder* and submitted on the briefs of *Michael C. Snyder* and *Randall G. Spence* of *Meshbesher, Singer & Spence, Ltd.* of Minneapolis, Minnesota.

For the defendant-appellant Susan Biebl the cause was orally argued and submitted on the brief of *L.E. Sheehan* of *Moen, Sheehan, Meyer & Henke, Ltd.,* of La Crosse.

For the defendant-respondent the cause was orally argued and submitted on the brief of *Claude J. Covelli* of *Boardman, Suhr, Curry & Field* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

475

EICH, C.J.   Meghan Meshbesher was seriously injured when the automobile in which she was a passenger collided with another vehicle. Among others, she sued Susan Biebl, another passenger who, just prior to the collision, attempted to take the wheel from the driver of the car, apparently believing an accident was imminent. Meshbesher joined State Farm Mutual Automobile Insurance Company, Biebl's father's insurer, as a defendant, claiming recovery under the provisions of the policy extending coverage for Biebl's use of a "non-owned car" with the owner's or possessor's consent.

The trial court granted summary judgment dismissing the claim against State Farm and Meshbesher appealed. The issue is whether Biebl's acts were "within the scope of consent" of the driver of the car under the "non-owned car" provisions of the State Farm policy. Because we believe they were not, we affirm the judgment.

In summary judgment cases, we employ the same analysis as the trial court. *Preloznik v. City of Madison,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582 (Ct. App. 1983). It is a well-known and frequently-described methodology and it need not be repeated here. *See, e.g., State Bank of La Crosse v. Elsen,* 128 Wis. 2d 508, 383 N.W.2d 916 (Ct. App. 1986). Suffice it to say that we have examined the pleadings—which set forth a claim and a defense—and the affidavits and other proofs submitted by the parties, which reveal an absence of disputed material facts. In such cases, summary judgment is an appropriate means of deciding the legal issues in advance of trial. *Smith v. State Farm Fire and Cas. Co.,* 127 Wis. 2d 298, 300, 380 N.W.2d 372, 373 (Ct. App. 1985).

In May, 1986, Meshbesher's parents left her in the care of her older sister, Amantha Elder, while they went

on a weekend out-of-state trip. Elder did not have a driver's license but knew how to drive. She took Meshbesher, Biebl and some other young people out in the family car to get some food. Biebl, who was then sixteen years old, sat in the front seat next to Elder, and Meshbesher and three other children were in the rear seat.

While on a two-lane road, the Meshbesher car approached two cars traveling in the opposite direction. As they crested a hill, Biebl, apparently fearing a collision with the first oncoming vehicle, attempted to grab the steering wheel from Elder and the car veered onto the right shoulder. As the two young women struggled over control of the wheel, the car turned back sharply onto the pavement and traveled across the road into the opposite lane, colliding with the second oncoming car.[1] One of the children in the rear seat was killed in the accident, and Meghan Meshbesher sustained severe and permanent head injuries.

The State Farm policy would cover Biebl if she were "us[ing] a car owned by someone else, and that use was within the scope of consent of the owner or person in lawful possession of it." As indicated, the trial court denied coverage on grounds that Biebl's "use" of the Meshbesher car was not undertaken with Elder's consent.

---

[1] Biebl, suffering from retrograde amnesia, remembers nothing of the accident. Elder's affidavit states that she was driving properly on the right of the centerline just prior to the accident, while another passenger in the Meshbesher car and the driver and passengers in the first oncoming car stated that Elder was driving over the centerline. As will be seen in the following analysis, we do not consider these factual disputes to be material.

"[P]ermission [to use a car] may be implied as well as actual [in order for insurance coverage to apply]." *Derusha v. Iowa National Mut. Ins. Co.,* 49 Wis. 2d 220, 222, 181 N.W.2d 481, 482 (1970). "Implied consent . . . must proceed from and be manifested by some acts, words or conduct of the permitter." *Dahlke v. Roeder,* 14 Wis. 2d 582, 587, 111 N.W.2d 487, 490 (1961). Implied consent "depends on the state of mind of the permitter, but may be proved by circumstantial evidence. In effect, implied permission is but actual permission circumstantially proven." *Derusha,* 49 Wis. 2d at 223, 181 N.W.2d at 482.

Both sides agree that Elder did not give Biebl express permission to take, or attempt to take, the wheel and Biebl acknowledges that there were no specific words or conduct on Elder's part from which permission could be implied. Biebl argues, however, that courts have created a legal fiction which will imply consent in any situation where the actor faces an "emergency"—regardless of any actual or implied consent. Thus, argues Biebl, even though Elder may have actively resisted Biebl's attempt to wrest the wheel from her grasp, her consent should be implied by the court because of the emergency presented by the oncoming car(s). Biebl asserts that this "emergency" doctrine is "created by the necessity and need for immediate action," and she refers us to two Wisconsin cases she claims support her proposition: *Bauer v. Hardware Mut. Casualty Co.,* 13 Wis. 2d 21, 108 N.W.2d 271 (1961); and *Prisuda v. General Casualty Co.,* 272 Wis. 41, 74 N.W.2d 777 (1956). We are not persuaded. We do not believe such an "emergency exception" exists in Wisconsin absent language to that effect in the insurance contract.

The cases cited by Biebl do not satisfy us that the supreme court has adopted an "emergency" rule. Both *Bauer* and *Prisuda* involved "omnibus" insurance coverage—coverage mandated by statute and for which the legislature itself has dictated the policy language. Under the omnibus clause, the policyholder may grant permission to any person to drive the insured automobile, and that person will be covered. The purpose of the clause is to broaden the scope of insurance so that more injured people will be covered. *Derusha,* 49 Wis. 2d at 223, 181 N.W.2d at 483. In order to effectuate that legislative intent, such clauses "[should] be broadly interpreted since the statute requiring them is remedial." *Id.*

In contrast, the extension of similar coverage for injuries resulting from use by the insured or members of his or her family of a non-owned car with the owner's or possessor's consent is a matter of contract. It is risk protection that is bargained by the parties; Wisconsin does not require the insurer to provide it.

Thus, any public policy considerations which might result in creation of a fictional "emergency" exception to the consent requirement under the legislatively-mandated omnibus clause do not apply here. Biebl is covered by her father's insurance only if the policy says so.

Beyond that, neither *Prisuda* nor *Bauer* directly holds that there is an emergency exception to the consent requirement in Wisconsin—whether in omnibus coverage or in other policy provisions such as those at issue here.

In *Prisuda,* the original driver, Allen, was a young man whose parents had allowed him to drive some friends to a swimming party but had specifically admonished him not to let anyone else drive the car. On the

479

way home, Allen asked a companion to drive because he was feeling tired, and the accident occurred while the companion was driving.

While the limited consent given to Allen by his parents was undisputed, the plaintiff, seeking coverage under the omnibus "operating-with-the-insured's-permission" clause, argued that "an emergency situation was created" when Allen found himself too tired to drive, and that the consent of his parents to the companion's taking the wheel should be "implied from the circumstances" under principles analogous to the law of principal and agent—particularly the rule of "agency by emergency or necessity." The plaintiff urged the court to apply such a rule to extend coverage to the driver.

The court declined to do so, noting that "under the law of agency, it is the principal's purpose . . . that [controls] and he is the one to decide, where possible, how the emergency is to be met." *Id.*, 272 Wis. at 50, 74 N.W.2d at 782. Thus, said the court, "[even if it were] to be considered that an emergency had been created," Allen's parents should have been notified in order to obtain their consent to the companion's driving. *Id.* at 51, 74 N.W.2d at 782. Noting that "[i]t does not appear that any effort was made to communicate with [Allen's parents] or that it was impossible to do so," the court concluded that no emergency existed. *Id.*

In *Bauer*, the driver, again a young adult, had permission from her parents to drive the family car to a store to pick up some merchandise. A companion accompanied her, and when they reached their destination the driver left the engine running and went into the store, leaving the companion in the car. At the request of a police officer, the companion moved the car from the no-parking zone where the driver had left it and, while doing so, was involved in an accident.

The court framed the issue as whether the facts "constitute[d] an emergency that would create implied consent by the [driver's parents]." *Id.,* 13 Wis. 2d at 25, 108 N.W.2d at 273. The court, noting only that the worst that could have happened was that the driver would have received a parking citation, held that no emergency existed. *Id.* at 26, 108 N.W.2d at 273. At best, these cases indicate that such an exception *may* exist under the omnibus clause in Wisconsin—but even that issue has yet to be squarely decided. We therefore decline to read an "emergency exception" into the plain and unambiguous requirement of consent under the non-owned car provisions of Biebl's policy.

Even if *Prisuda* and *Bauer* could be read to create an emergency exception to the consent requirement which could be implied from the facts and circumstances of the particular case, "such implied consent . . . depends on the state of mind of the permitter . . .." *Nordahl v. Peterson,* 68 Wis. 2d 538, 545, 229 N.W.2d 682, 687 (1975). Indeed, even the *Prisuda* court looked to the intent of the "principal"—the "permitter"—as the source of any implied consent. *See also Dahlke,* 14 Wis. 2d at 587, 111 N.W.2d at 490 (implied consent should be inferred from words or acts of the permitter).

In this case, the "permitter" was Amantha Elder, and everything that Elder did at the time of the accident indicates that she did not consent to Biebl's attempted operation of the car. Indeed, she actively resisted Biebl's attempt to take the wheel. There is nothing in Elder's words or actions to indicate that she actually—or impliedly—consented to Biebl's actions.

*By the Court.*—Judgment affirmed.