Jung Keon **Yoo**,
Plaintiff/Appellee,

v.

Nicolasa **Quitugua**, and
Jeffrey Quitugua, a Minor,
Defendants/Appellants.
Appeal No. 93-011
Civil Action No. 90-0722
May 12, 1994

---

Submitted on Briefs February 11, 1994

Counsel for appellants: G. Anthony Long, Saipan.

Counsel for appellee: Bruce L. Mailman, Saipan (White, Pierce, Mailman & Nutting).

BEFORE: DELA CRUZ, Chief Justice, VILLA-GOMEZ, Justice, and BELLAS, Special Judge.

DELA CRUZ, Chief Justice:

This is a personal injury action arising from an automobile accident. Judgment in the amount of $66,105 plus costs was entered against Jeffrey Quitugua, a minor, and his parents Nicolasa and Daniel Quitugua. Mrs. Quitugua and Jeffrey appeal the trial court's finding of parental liability based on negligent entrustment of the family truck to Jeffrey, an unlicensed minor.[1] Because the facts of this case support a finding of liability based on negligent entrustment, we affirm the judgment below.

## I

On the evening of October 1, 1989, while driving his parents' truck, Jeffrey collided with the plaintiff Jung Keon Yoo's sedan. Mr. Yoo suffered serious and permanent bodily injuries. The collision occurred after a high speed chase of Jeffrey by the police. Jeffrey was intoxicated.

At the time of the accident Jeffrey was only sixteen years old. He did not have a driver's license, and his mother knew he had no license to drive. The trial court

---

[1] Mr. Quitugua does not appeal.

found that Jeffrey's parents had allowed him to use the truck "many" times prior to the accident, despite their knowledge that he did not have a license to drive. Findings of Fact ¶¶ 14 and 15 in *Yoo v. Quitugua*, Civ. No. 90-0722, (N.M.I. Super. Ct. Jan. 4, 1993) (Findings of Fact and Conclusions of Law).

In finding liability based on negligent entrustment, the court stated: "Nicolasa and Daniel Quitugua had reason to know because of Jeffrey's youth, inexperience, his lack of [a] driving record and his lack of qualifications as a driver, [that he] would use the Toyota pickup truck in a manner involving unreasonable risk of physical harm to himself and others whom defendant parents should have expected to share in or have been endanger[ed] by his use." *Id.*, Conclusion of Law ¶ 8.

## II

Mrs. Quitugua raises two issues for our review.

█ The first issue is her contention that 6 CMC §§ 5201 and 5202 absolve parental liability for the delinquent acts of a minor, including the car accident at issue. She argues that the trial court erred in applying the theory of negligent entrustment found in the RESTATEMENT (SECOND) OF TORTS (1965) (hereinafter "TORTS") in view of 6 CMC §§ 5201 and 5202, which preclude parental liability here.

The issue of whether a particular law applies or not is a legal question. Therefore, our review is de novo. *Sonoda v. Villagomez*, 4 N.M.I. 34 (1993).

█ The second issue, assuming the theory of negligent entrustment applies, challenges the ultimate finding of parental liability based on negligent entrustment. This issue essentially questions the sufficiency of the evidence supporting liability based on negligent entrustment and, thus, the trial court's findings of fact. Our review of this issue is, therefore, for clear error. *Apatang v. Mundo*, 4 N.M.I. 90 (1994).

## III

### A. The Applicability of the Juvenile Delinquency Statutes

█ Mrs. Quitugua argues that 6 CMC §§ 5201 and 5202[2] apply to this case and preclude parental liability

here. She contends that, in view of these statutes, the trial court erred in applying the common law theory of negligent entrustment set forth in TORTS. 7 CMC § 3401. We reject this argument as frivolous.

Six CMC §§ 5201 and 5202 relate to parental liability for the *delinquent* acts of a juvenile placed on probation. The case before us is a civil action asserting liability of any actor (not necessarily a parent) for negligent entrustment. Just as the criminal laws do not preclude an injured party from seeking civil damages for harm suffered as a result of criminal conduct, a party is not precluded from seeking damages from a minor and his parents for damages suffered at the hands of that minor. Therefore, we reject the argument that the juvenile delinquency statutes set forth in 6 CMC §§ 5201 and 5202 are a "written law," precluding the application of TORTS provisions on negligent entrustment.

### B. The Issue of Negligent Entrustment

The second issue is whether the trial court's finding of parental liability based on negligent entrustment constituted error. Mrs. Quitugua argues that there was no evidence to support a finding that Jeffrey was incompetent to drive. She asserts that Jeffrey was (1) not an inexperienced driver, (2) not physically or mentally handicapped, (3) old enough to drive even though not licensed, and (4) not intoxicated at the time he took the truck. Further, there was no evidence that Mr. and Mrs.

---

is charged with the control of the child and has the power to exercise parental control and authority over the child.

§ 5202. Liability of Parent or Guardian.

. . . .

(b) If the child thereafter commits a second act and is for that reason found delinquent, or violates the conditions of probation, and the Court finds at the hearing that the failure or neglect of the parent to subject the child to reasonable parental control and authority or to faithfully discharge the conditions of probation of the child on the part of the parent is the proximate cause of the act or acts of the child upon which the second finding of delinquency is based, or upon which the child is found to have violated the conditions of probation, the Court may declare that all or a part of the recognizance shall be applied in payment of any damages; otherwise, the proceeds therefrom, or any part remaining after the payment of damages as aforesaid, shall be paid into the Commonwealth general fund.

---

[2] 6 CMC §§ 5201 and 5202 provide:

§ 5201. Authority of Parent Over Child.
A parent or guardian having custody of a child

Quitugua knew Jeffrey was likely to become intoxicated or under the influence of drugs on the night of the accident. Finally, she contends that there was no evidence that Jeffrey was habitually reckless or has a violent nature or disposition.

Because the Commonwealth has no written law on the question pertaining to parental civil liability for the negligent act of a minor, the trial court applied the TORTS principle pertaining to negligent entrustment. 7 CMC § 3401.

■ TORTS § 390[3] provides:

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

The important question we need to answer is whether Jeffrey was competent to drive his parents' truck. We turn to the Commonwealth traffic laws regarding the licensing of persons operating motor vehicles on public highways.

Our traffic laws provide that no person may operate any motor vehicle in the Commonwealth "unless that person has been licensed as an operator under this division." 9 CMC § 2201. The Commonwealth Code also requires an examination of each driving applicant for eyesight, ability to read and understand traffic-control devices, knowledge of safe driving practices and of Commonwealth traffic laws, and an actual demonstration of the applicant's ability to operate a motor vehicle. 9 CMC § 2207. It notes that persons under the age of sixteen are "unqualified" to hold an operator's permit. 9 CMC § 2203(a).

■ Our law requires that only persons who are competent to drive are licensed and allowed to drive on our public roadways. Because an automobile is a

---

[3] RESTATEMENT (SECOND) OF TORTS § 390 (1965) is a special application of RESTATEMENT (SECOND) OF TORTS § 308. *Id.*, § 390 cmt. b. Section 308 provides:

It is negligence to permit a third person to use a thing or engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

dangerous instrumentality in the hands of inexperienced, youthful, and unqualified drivers, such traffic laws are necessary for the safety of the public and must be strictly enforced. This is why the Commonwealth requires testing before licensing.

Other jurisdictions agree. "The whole purpose of requiring drivers to possess licenses is to protect the public against the risks of permitting incompetent or inexperienced drivers to operate vehicles on the public thoroughfares." *Roland v. Golden Bay Chevrolet*, 207 Cal. Rptr. 413, 418 (Cal. Ct. App. 1984), *reh'g granted and dismissed as moot*, 217 Cal. Rptr. 415 (1985). "Licensing is a means by which the state may determine whether vehicle operators have acquired a minimal standard of competence." *City of Spokane v. Port*, 716 P.2d 945, 947 (Wash. Ct. App. 1986).

■ One state jurisdiction has held that its state licensing laws constitute a declaration that minors under the licensing age are incompetent drivers who do not possess sufficient care and judgment to safely operate a motor vehicle on the highway. *Sedlacek v. Ahrens*, 530 P.2d 424, 426 (Mont. 1974); *see also Vince v. Wilson*, 561 A.2d 103 (Vt. 1989). In the case before us, the trial court concluded that Jeffrey's youth, lack of a license and inexperience as a qualified driver proximately caused the accident. We find no error with this finding.

In order to find Mr. and Mrs. Quitugua liable under TORTS § 390, the trial court had to find that they knew or had reason to know of Jeffrey's incompetence to drive and that this incompetence was a proximate cause of the accident with Mr. Yoo. Although Mrs. Quitugua argues differently, the evidence supports the trial court's factual findings and conclusions.

Mrs. Quitugua testified that she knew Jeffrey did not have a driver's license and that she was "just taking a chance that [Jeffrey] might know how to drive." Transcript at 148:9-11 and 152:16-18. She also testified that she gave Jeffrey permission to use the truck to run errands, knowing that he had no license to drive. *Id.* at 146:4-13, 155:16-23, 57:20-58:3, 73:20-74:4 and 79:12-80:7. She was aware of Jeffrey's frequent use of the truck and tacitly approved it. Despite this knowledge, she and her husband allowed him to use the car, risking the possibility of an accident.

■ The trial court's conclusion that the Quituguas permitted Jeffrey to use the truck on the night of the accident knowing that he was unlicensed was correct. Implied permission may be deduced from the course of conduct and relationship between Jeffrey and his parents. *See Derusha v. Iowa Nat'l Mut. Ins. Co.*, 181 N.W. 2d 481, 485 (Wis. 1970); *see also Jones v. Fleischhacker*, 325 N.W.2d 633, 640 (Minn. 1982). The evidence shows that the Quituguas had allowed Jeffrey to use the

123

truck whenever Jeffrey decided to do so, including the night of the accident. Although there was no express permission, based on Jeffrey's unrestricted use of the truck there was evidence of implied permission to do so. For example, Jeffrey testified that his sister Agnes taught him how to drive the family car in their driveway even though he was unlicensed. Transcript at 53:23-55:21. Also, Jeffrey's friends testified that Jeffrey drove them to and from school and on weekends.[4] Transcript, *supra*.

The trial court's conclusion that there was parental liability based on negligent entrustment is adequately supported by evidence of Mrs. Quitugua's actual knowledge that Jeffrey had no license to drive and implied permission given to Jeffrey to use the truck. The standard of review we apply is for clear error. Unless we are "convinced that a mistake" has been made in regard to the trial court's factual findings, we must affirm. *Apatang*, *supra*. The factual findings upon which the court based its conclusion that there was negligent entrustment was not clearly erroneous. Had Jeffrey been licensed, he would have had the legal basis to drive and to operate his parents' truck.

We need not address the question of whether Mr. and Mrs. Quitugua are also liable for the negligent entrustment of the truck to Jeffrey because Jeffrey was intoxicated at the time of the accident. If, at the time of the accident, they knew that Jeffrey habitually consumed alcohol to the point of inebriation and took no precautionary measure to prevent Jeffrey from driving the truck, then these alleged facts would have been an additional basis of liability for negligent entrustment. Here, however, the evidence appears insufficient to establish these allegations. At most, the finding that Jeffrey was under the influence of alcohol at the time of the accident merely supports the trial court's conclusion that Jeffrey was not only an inexperienced driver, but an irresponsible one as well.

We therefore **AFFIRM** the judgment of the trial court.

---

[4] While this evidence was introduced apparently to show that he could drive, it fails to overcome the fact that he had no license to drive, was an inexperienced driver and should not have been driving on the night of the accident.